## JACOB LUKE, et al., v. ISAAC JOHNNYCAKE.

9   511
41   736

1. DEFAULT; *Filing Pleadings out of Time.* An answer filed out of time, and without leave or consent, is no answer, and need not be noticed. The cause stands for hearing as on default.

2. WAIVER; *To what extent.* Where a cause so situated stands regularly for hearing at the commencement of the term, and during the term the plaintiff files a reply, the filing of the reply may be deemed such a waiver as to the filing of the answer, that it should not be disregarded, but should not be taken as an extension of the time of filing so as to work a continuance of the case.

3. EVIDENCE; EXAMINATION; *Ground of Objection must be stated.* If the only objection to a question is that it is leading, the ground of the objection should be specially pointed out to the court below, or it will not be considered in a reviewing court.

4. ———— *Issue; Immaterial Evidence.* Where the answer sets forth that a certain contract was assigned to the plaintiff in full payment and satisfaction of a certain note sued on, it is immaterial how much was due on the contract.

5. INSTRUCTION; *When Erroneous, but not Prejudicial.* An instruction which the special findings of the jury plainly show could not have prejudiced the defendant, is not cause for reversal, even though it be erroneous.

6. ———— *When Jury disregard Instructions.* The action was to recover the amount of two notes; the court directed the jury, if they found for the plaintiff, to find how much was due (if anything) upon each note. Disregarding this direction, the jury found in the aggregate the amount of both notes. This was error, but as it did not prejudice the defendants it was not cause for arresting the judgment.

7. VERDICT; *Weight of Evidence.* A reviewing court will not reverse a judgment because the verdict seems against the weight of the evidence, unless the preponderance is great; much less, where the evidence is nearly balanced, or inclining in favor of the verdict.

*Error from Wyandotte District Court.*

LUKE bought from *Johnnycake* 160 acres of land, and for the deferred payments gave two notes, and secured said notes by a mortgage on the premises purchased, executed by himself and wife. After one of said notes had become due *Johnnycake* brought his action to foreclose said mortgage. A trial was had, the verdict set aside, and a new trial granted. The second note had then matured; and on leave, *Johnnycake* filed an amended petition, praying judgment for the amount due on the two notes, and for foreclosure, etc. The amended petition was filed April 17th 1871. The first term of the district court thereafter to be held was fixed by law for the first Monday in June, and the term was then held. *Luke and wife* answered the amended petition on the 10th of May, 1871; and plaintiff filed a reply on the 9th of June—the court being then in session. Both answer and reply were filed without leave of the court. On the 14th of June the case was called, and defendants objected to a trial being had because the case was not at issue ten days before the commencement of the term. On plaintiff's motion the answer and reply were then stricken from the files, as having been filed out of time. Upon defendant's motion, and affidavit showing a meritorious defense, the answer was refiled, and plaintiff on leave refiled his reply thereto. Defendants moved for a continuance on the ground of absent witnesses, and filed proper affidavits showing what facts he could prove by such absent witnesses; and plaintiff admitting the affidavits to be read as depositions, the motion for a continuance was denied, and the cause was tried. The defenses set up in defendants' answer were, that the first note had been paid in full by the assignment by *Luke* to *Johnnycake* of a certain "tie contract" between Luke and one Stevens, on which over $1,000 were due, and which *Johnnycake* had agreed to accept in full satisfaction for said first note; second, that by his contract of purchase *Luke* was to pay $12 per acre for the land, whereas, by fraud and misrepresentation he

had been induced to sign the note for the last payment for $800, instead of $320.  Defendants asked several instructions, most of which were given as asked.  The 4th instruction asked was modified, as follows:

"4th.  If the jury find that the price agreed upon between plaintiff and Luke for the sale and purchase of this land was either $12, or $14, per acre, and that by misrepresenting or misreading said notes and mortgage, or either of them, to defendant, the plaintiff induced defendant to sign them when they represented $15 per acre, of which he was not advised, this would be such a fraud as would vitiate both notes and mortgage, and your verdict will be for the defendants."  *Given*, with the modification, that "if *both notes* were misread, then it would be such fraud as to make them both void."

The testimony is sufficiently stated in the opinion.  The court below, at defendants' instance, submitted four questions to the jury, which, with their answers thereto, are as follows:

"1st.  *Q.*–Did the plaintiff on the 15th of May 1869 take an assignment of a contract between Jacob Luke and U. Stevens in full payment and satisfaction of the first note declared upon, and did the plaintiff accept such contract so assigned in full payment of such note?  *Answer*—No.

"2d.  *Q.*–Did M. B. N., as the agent of Johnnycake, cheat and defraud Luke by misreading the deed at the time he delivered it to Luke?  *Answer*—No.

"3d.  *Q.*–Did Jacob Luke know what he was paying for the land at the time he bought it of the agent of Johnnycake?  *Answer*—Yes.

"4th.  *Q.*–Was either of the notes declared upon in this suit misread to the defendant by the agent of the plaintiff at the time he, defendant, signed them?  *Answer*—No."

The jury returned a general verdict for the plaintiff, assessing the amount due on both notes at $1,986.66.  New trial refused, and judgment upon the verdict, and for foreclosure, etc., and *Luke and wife* bring the case here by petition in error.

*D. B. Hadley*, and *C. S. Glick*, for plaintiffs in error:

1. The filing of the reply by plaintiff was a waiver of any objection he had to the *time* of filing the answer.  After

having filed his reply to the answer, it is submitted that he intended to take no advantage of the answer being filed after the rule-day, and waived any objection which he might have taken but for this waiver. See *Savage v. Challiss*, 4 Kas., 319. True, in the case cited, the plaintiff only moved to strike out a part of the answer, and in this case he moved to strike off the entire answer; yet, in both cases the motion came after reply. The motion in this case came after the case was called for trial, thus taking the defendants wholly by surprise, for the reason that there is a rule of court that all cases which are not at issue ten days before the commencement of a term of court, shall not be for trial at that term of court. This case was not at issue until after the commencement of the term, which was when the plaintiff filed his reply. By sustaining the motion to strike off the answer, it left the defendant in default, and therefore liable to a trial at that term, without his witnesses to aid him in procuring a fair trial. See § 5, ch. 116, Laws of 1871, p. 278. This is different from the law of 1870, where it provided actions should be for trial where they "are or *should* have been made up." The defendants in this action had a right to believe that their trial would not come up; and when they were pressed into trial without their witnesses, it was an act of injustice to them, for which courts of justice were not instituted.

2. The court instructed the jury that if *both* notes were misread, it would be such fraud as would render them void, carrying with the instruction the implication to the jury, that one note might be misread, and yet not render either the note or mortgage void. It is submitted that this was an entire contract for the sale of so much land, at such a price per acre, and the mortgage is given to secure the full amount due on the contract and unpaid, and if there is a fraud in any portion of the consideration in the mortgage, that vitiates the entire mortgage, and renders it void. Luke swore the price per acre agreed to be paid by him was $12. Johnnycake swore that he had previously testified in his deposition that the

price agreed upon was $14 per acre.    The mortgage secured notes which represented $15 per acre.    This must render the whole of the papers void.    The charge of the court then should have been as asked by defendants.    If the statement made by Johnnycake in his deposition be true, it would cause the mortgage to cover $160 more than Luke agreed to pay. No foreclosure could be had on such a mortgage as that, and it was of the first importance to the defendants, that the instruction should have been given as asked.

3. Stevens was indebted to Luke for railroad ties in a sum sufficient to meet the first note sued upon.    Johnnycake by his agent and attorney, Newman, accepted this contract between Luke and Stevens, and agreed to apply whatever Stevens owed or was to owe thereon, in payment of Luke's notes to Johnnycake.    Todd swears Johnnycake was to accept Stevens as "paymaster."    This contract he still retains.    But Johnnycake claims that it was not taken as *payment.*    Would he be justified in holding that security in his own hands beyond the power of Luke to control it, and then refuse to collect and apply the, at least $800, due thereon, upon Luke's indebtedness?

4. Counsel for plaintiff asks of the witness Newman, a leading question, to wit, "Did Luke ever charge you with defrauding him up to January 1, 1871?"    All authorities condemn such questions.    He also asks the witness Todd a leading question.    The very answer plaintiff desired the witnesses to give was suggested to them by these questions. 1 Greenl. Ev., §§ 434, 434a; 6 Binn., 483; Tait on Ev., 427.

5. The court charged the jury that they must find the amount due on each note separately, if they found for plaintiff. Defendants asked the court to charge that no verdict could be rendered on the note which fell due after the action was commenced, which was done.    Yet the jury found a verdict for the amount of both notes, including the one not due at the commencement of the action.    Defendants included this error in their motion for a new trial.    The right of action must exist at the commencement of the action.

6. The preponderance of all the evidence given in the case taken as the law intends that it shall be taken, was in favor of Luke. The witnesses stating that the land was sold at $15 per acre, are Newman and Johnnycake; and Todd says Luke said to him that his two notes were for $800 each. This is all the evidence there is to prove that sum as the price. On the other hand, Luke testified positively the price was agreed to be $12 per acre. Johnnycake swore in his deposition the price was $14 per acre. The two witnesses, John Luke and John C. Mathews, swore that the price was agreed to be $12 per acre; (for the statement in the affidavit to continue must be regarded as their sworn testimony.) Here are four witnesses swearing the price was not over $14 per acre. Johnnycake has stultified himself; then throw him out, and it stands three saying the price was $12 per acre, and one saying it was $15 per acre. Luke being unable to read or write, he could not read the papers. Hence his attention was not called to the fraud until after this suit was brought. It is submitted that on the ground of preponderance of testimony alone, the judgment of the court below ought to be reversed.

*Cobb & Alden*, for defendant in error:

1. It was not error to order the answer and replication to be struck off, when each was filed out of time and without leave. But if the said order was error, the defendants below were not "prejudiced thereby," the papers being afterward allowed to be filed on leave of the court.

2. There was no error of the court below in refusing to give the fourth instruction asked by the plaintiffs in error. The modification conformed the same to settled rules of law, and the findings of the jury show that defendants below were not prejudiced.

3. There being conflicting evidence on the issue of payments by the assignment of the contract, the jury were the sole judges of the facts thereof, and had no other question to consider in regard to said contract. 1 Greenl. Ev., § 51.

4. Nor does it appear from the case made herein that there

was error in overruling the objections to questions asked of witnesses Newman and Todd. The grounds of the objection were not set forth. If the objections were, that the questions were *leading*, it should have been made so to appear in the exceptions. 1 Greenl. Ev., § 435.

5. Plaintiffs in error allege that the verdict of the jury was not sustained by the evidence. But there *was* testimony produced, and that of the most positive character, in support of plaintiff's claim, and the findings of the jury, with such testimony before them, was in the exercise of their legitimate functions, and cannot be a ground for reversal on error. 4 Kas., 206.

The opinion of the court was delivered by

KINGMAN, C. J.: The answer and reply were filed out of time, and without leave, or consent. On motion of plaintiff they were stricken from the files; but with leave of the court, on showing made, were refiled, and the cause was tried on the issues so made up. Whether the order was right or wrong, unless defendants suffered some injury thereby they cannot claim a reversal of the case on that ground, as they had the benefit of their answer. But it is urged that by that action they were forced into trial, at that term, without preparation. Without such order it is said the case would not have stood for trial, as the issues were not made up ten days before the commencement of the term. Let us see how this is: Had an answer been filed in proper time the issues would have been made up in time for trial at the June Term. An answer filed out of time, and without leave, is no answer, and requires no notice. So that when the court met, the defendants were in default, and the case was regularly for hearing at that term. Had the defendants proceeded regularly, and obtained leave to file their answer, it ought to have been on terms that the delay should not work a continuance. It is not intended that such terms would have necessarily been imposed; but that they would be proper terms, where no cause was shown for delay.

II. During the term, the reply was filed. If it was a waiver of the irregularity in the filing of the answer, (and we are inclined to hold that it was,) it was at least saying nothing more than this, that plaintiffs would not insist that there was no answer, but would recognize it as though filed in time. The reply was filed out of time, and defendants could have it struck from the files; but then they would be in default, for they would remove the instrument that gave them a standing in court. The waiver, at most, was, that the answer would be considered as filed in time if the defendants would consider the reply as filed in time; and on that understanding the issues were made up. So that the case stood for trial at the June Term. If these views are correct, then the court erred in striking the pleadings from the file; but as they were refiled, there was no prejudice, for the case stood for trial at that term.

III. The next objection is that certain questions were asked that were leading in their character. The objection to these questions was general. It is asking too much of a court to analyze each question, as it is asked, to see if it is open to any possible objection. It is the duty of the counsel to point out whether the objection is one to the form of the question, as distinguished from the relevancy, or materiality, of the evidence sought to be elicited. And when the objection is to the form only, it is a matter resting so much in the sound discretion of the court, whether such a course of examination will be allowed, that it will be an exceptional case where this court will reverse a case for that cause only. 1 Greenl. Ev., § 435, and notes. In this case it is sufficient that no objection was made that the questions were leading. Had that objection been made, the party could have so framed his question as to have obviated the objection.

IV. There was no state of facts presented that authorized the plaintiff in error, Luke, to prove damages in consequence of a litigation to the title to the land. Nor was there any error in refusing to permit Luke to prove what was due from Stephens to Luke. The averment in the answer was that

Johnnycake took the contract between Luke and Stevens in full payment of one of the notes. If that was true, that was an end of the matter. If, as claimed by plaintiff, the contract was only taken for accommodation, it was immaterial how much was owing from Stevens to Luke. The evidence showed that it was taken as payment in full, or that it was only taken by Johnnycake's agent to apply what was paid on it to Luke's notes. In the latter view of the case, it was not relevant to prove what was due. The only question was, what was paid? In the former view it was entirely immaterial how much was due. The conflicting testimony was for the jury.

V. The instructions submitted the issues fairly to the jury. If the modification made by the court to the fourth instruction asked by the defendants is open to the objection made by plaintiffs in error, then the answer is, that the finding of the jury, that Luke knew what he was paying for the land when he bought it of the agent of Johnnycake, and that the deed and notes were not misread to Luke, shows that plaintiff in error suffered no loss by reason of the instruction. We do not decide however that the modification was wrong.

VI. The amended petition was upon two notes, both due when the amended petition was filed. The court directed the jury, if they found for plaintiff, to find what amount was due on each note separately. The jury returned their verdict for one amount, evidently the sum of both notes. The court below refused to set aside the verdict for this cause, and the counsel for plaintiffs in error fail to show this court how they can be injured by this disregard of the directions of the court by the jury. It is true, the jury should have followed the direction of the court in this respect; but as no injury followed their error, there ought to be no reversal on account of it.

VII. It is insisted that the verdict is against the weight of the evidence. This court, as has been often decided, is not in as good a situation to form an opinion as the court below on that question; and when there is evidence to support the verdict, and the court which tried the case has

refused to set aside the verdict, this court will not reverse the judgment because it seems from the record to be against the weight of evidence. But as counsel, notwithstanding this well-known rule, have pressed this point, it is deemed proper to state the facts. The controversy was, whether the price paid for the land was $12 or $15 per acre. The plaintiffs in error averring that the agreed price was $12 per acre, and that the notes, mortgage, and deed had been drawn showing sums amounting to $15 per acre, and that they were fraudulently so drawn, and plaintiffs in error, who could not read, were induced to receive the deed and execute the notes and mortgage by the fraudulent conduct of the defendant in error, or his agent. The evidence on this point is this: The deed, mortgage, and notes were *prima facie* evidence as to the sums for which they were executed. The person who drew them up testifies that they were drawn according to the terms of purchase. The defendant in error testifies that the price agreed was $15 per acre. Mr. Todd, who as an attorney had had something to do with the tie contract between Luke and Stevens, testifies that he had often had conversations with Luke about the purchase of the land, and Luke stated that he had paid $800, and was to pay $1,600 more, and that it was a bargain. Twenty-four hundred dollars is just $15 per acre for the land. Here then is the testimony of three men, and the deed, notes, and mortgage, all directly and positively testifying one way. On the other hand, Luke, and two witnesses, testify that the price was but $12 per acre. One other fact: Johnnycake had given his deposition in the case, and in that deposition had testified that the land was sold for $14 per acre, and it is insisted that this apparent contradiction destroyed the value of his testimony. It was certainly calculated to lessen the confidence of the jury in his statement, if unexplained; but it would not destroy it. The jury and the court heard this testimony, and gave credence to the witnesses for the defendant in error. We cannot say they were wrong. On the contrary, it seems to us that the likelihood is that

they were right, looking only to the record. The judgment must be affirmed.

All the Justices concurring.