Willis v. Sproule.

| 13 | 257 |
| 50 | 32 |
| 13 | 257 |
| 52 | 169 |
| 13 | 257 |
| 63 | 619 |

RICHARD WILLIS, et al., v. FRANK SPROULE, et al.

1. PRACTICE; *Objections to Evidence.* An objection to evidence should be specific, and should designate the ground upon which the objection is founded.

2. COUNTY ROADS; *Records of Board of County Commissioners; Evidence.* Whenever the records and files of the board of county commissioners purporting to establish a county road are regular in form, and contain everything which the statutes require to be preserved and kept in such cases, such records and files will prove *prima facie* at least that such road has been legally established, and has a legal existence; and there is no necessity in the first instance to resort to evidence *aliunde* to prove the legal existence of the road.

3. —————— *Notices of Petition for, and of Viewing Road.* In 1870 it was not necessary that the notices required to be given under §§ 3 and 4 of the road law, (ch. 89, Gen. Stat. 1868,) should be preserved, or that any record should be made of them.

4. PETITIONERS FOR ROAD; *Qualifications.* While it is necessary that the petition for laying out a road should be signed by at least twelve householders, yet it is not necessary, in order to make the road valid, that the

17—13 KAS.

petition itself should show upon its face that all or any of said signers are householders. The statute does not require anything of that kind.

5. APPOINTMENT *of Viewers.*   Where the order of the county board appointing the road viewers is substantially in compliance with the statutes, the order is sufficient.

6. WIDTH OF ROAD; *Report of Viewers.*   Where the viewers neglected to report upon the width of the road as required by § 31 of the road law, (ch. 89, Gen. Stat.,) and the road was afterward established, *held,* that under said § 31 the road will be forty feet wide.

7. VIEWERS — *Their Qualifications, and Report.*   The viewers made their report in writing, putting in everything required by the statute except the width of the road, and then signed the same.   Immediately following their signatures are the following words, to-wit: "Qualified by James F. Foreman, County Surveyor."   And then follows the surveyor's return, which includes the map and field notes of the survey of the proposed road.   The road was afterward established by the board of county commissioners, and the court below upon all the evidence rendered its decision that the road was legally established and was valid.   *Held,* that the supreme court cannot now determine from said words alone that said road was not legally established, or is invalid.

8. AWARD OF DAMAGES, *by Viewers.*   The road viewers made no separate report of the amount of the damages which they allowed, as required by § 7 of the road law.   But the report of damages was made by amending the original report by adding the words, "and we awarded Ole Clemenson $25 damages, no other parties claiming any;" and this amendment was made by two of the commissioners only: *Held,* That this was a great irregularity; but after the road has been established, it cannot be held invalid in a collateral proceeding merely on account of such irregularity.

9. OFFICERS; *Officer de facto; Evidence.*   Where a person is sued for an act done by him for the doing of which he justifies as an officer, he may always in the first instance show by the introduction of parol evidence that he was at the time of the commission of the act complained of such officer *de facto,* for such evidence is *prima facie* evidence that he was such officer *de jure.*   But even if it were error in this case to admit such evidence, still the error would be immaterial, for the act done was the removal of an obstruction from a road so that the road could be traveled, and this any person had a right to do, whether he was an officer or not.

10. RECORDS OF COUNTY COMMISSIONERS; *Proceedings relative to Roads.*   The greater portion of the proceedings of county commissioners in the establishment of county roads is judicial in its nature, and whenever the commissioners act in a judicial or *quasi* judicial capacity their proceedings are entitled to about the same respect from superior courts and elsewhere as the proceedings of other tribunals of special, limited and inferior jurisdiction.   But even where their acts are ministerial, still, while superior courts should rule strictly so as to keep them within the

strict limits of their jurisdiction, yet such courts should rule liberally in other respects so as not to invalidate their proceedings for immaterial irregularities.

### Error from Doniphan District Court.

TRESPASS, brought by *Willis* and another against *Frank Sproule* and *Thomas L. Chilton*, for tearing down their fence. The defendants admitted the alleged acts of trespass, and set up in their answer that the place where the alleged trespass was committed was a public highway; that the defendant *Sproule* was overseer of highways, and that he took to his assistance the defendant *Chilton*, and removed the obstructions across said highway, which was a fence joining the farms of plaintiffs. The action was commenced before a justice of the peace, was certified to the district court, where it was tried at the March Term 1873. On the trial the plaintiffs showed their possession of the land, and made proof of their damages, which were nominal only. The defendants on their part offered in evidence a petition on file in the office of the county clerk signed by more than twelve persons claiming to be "legal voters," praying for a road to be laid out where these acts of alleged trespass were committed, to the introduction of which paper the plaintiffs excepted, but the same was admitted. The defendants offered in evidence the record of the county board, appointing commissioners to view and report on the practicability of the road, which record was admitted against the objections of the plaintiffs. The plaintiffs then offered in evidence the records of county board which contained the report of the viewers, and the field notes, also the record of the board of commissioners establishing the road, all of which evidence was admitted against the objections of the plaintiff. *Sproule* also testified that he was overseer of highways in the district, and as such overseer opened the road on plaintiffs' land where it had been fenced in 1870. Plaintiffs offered to prove in rebuttal by one of the viewers, that there was nothing in their report when filed upon the subject of damages, and that two of the viewers, several days after the report had been filed with the county clerk, added to it an

award of damages to Ole Clemenson, which offered testimony was excluded. Finding and judgment in favor of the defenants. New trial refused, and the plaintiffs bring the case here on error.

*Albert Perry*, and *N. B. Wood*, for plaintiffs:

1. The court erred in admitting the petition for a road, because it does not purport to be signed by *householders*, as required by § 1, ch. 89, Gen. Stat., 897. No proof was made that the signers were householders; without such proof the paper was inadmissible. 2 Wis., 129; 6 Barb., 607; 1 Bibb, 514.

2. The record appointing the viewers was inadmissible, because it did not direct the viewers to view and lay out the road, and report as required by § 6 of the road law, but to report whether the ground was fit for a road —"practicable." The report of the viewers was also inadmissible, because it did not report upon the question of the utility of the road — the public necessity; they were a jury to determine the necessity of the road; (§ 6 of road law.) There must have been such necessity before the property of the plaintiffs could be taken for the highway. (7 Kas., 527; 7 Ohio St., 21; 1 Bibb, 514; 5 J. J. Marsh., 41.) It was also inadmissible because the viewers did not determine and report the width as required by § 31 of the road law. And without such determination the proceedings are void: 6 Binn., 36; 4 Watts & Serg., 39, 569; 7 Conn., 125; 8 Blackf., 289; 4 Barr, 337; 2 Mass., 491; 26 Maine, 178, 181. An order could not be made to open a road until its width had been established. 9 Barr, 69.

3. The report of the viewers was a nullity, because the viewers did not take an oath as required by § 5 of the road law. The report says that they were "qualified by James Foreman, county surveyor;" but he was not authorized to administer an oath to them. The statute authorizes him to administer an oath to a chain-carrier, (Gen. Stat., 289, §§ 157, 167,) and it nowhere authorized to administer oaths generally. The viewers, then, were not sworn. Without being sworn,

their proceedings were void: 3 Halstead, (N. J.) 301; 2 Pa., 207; 1 Green, (N. J.) 268; 26 Ala., 568; 5 Leigh, Va., 611; 1 Spencer, 387; 11 Iredell, 278; 4 Barr, 337; 5 J. J. Marshall; 7 Ohio St., 21; 2 Mass., 491; 1 Littell, 197; 1 Bibb, 514; 1 Monroe, 58.

4. There was no separate report made upon the question of damages, as required by the road law; at least the plaintiffs offered to show such to be the fact. Gen. Stat., 900, § 7.

5. No notice was given of the presentation of the petition to the county board, or of the meeting of the viewers; § 3 of road law. Without such notice the proceedings are void: 6 Dana, 330; 3 Green, (N. J.) 339; 2 Mich., 106; 2 Mass., 492; 3 Maine, 438.

6. To constitute this a highway there must have been, according to the weight of authorities, a strict compliance with the statute, or according to other authorities, a substantial compliance with the statute. There was neither: 12 Iowa, 155; 2 Kas., 116; Dillon Munic. Corp., 470; 44 Mo., 540; 49 Mo., 479; 39 Cal., 490; 22 Conn., 426; 20 Michigan, 57; 7 Ohio St., 21; Walker, 75; 14 Gray, 288.

7. It was error in the court to permit the overseer to prove that he was such officer by his own oath. It was not the best evidence. It should have been shown that he had qualified by taking the oath and giving bond. Gen. Stat., 1085, 1086; 1 Green, (N. J.) 314.

*Nathan Price*, and *W. D. Webb*, for defendants:

1. The question as to the admissibility of the various papers, records, evidence, etc., offered in evidence by the defendants were general and not special, except the objection to proving by parol that Sproule was overseer of highways. The attention of the court or counsel was not called by said objections, or any of them, to any particular alleged defect in the records. For instance, the objection that the viewers did not take the oath required by law was first suggested on the argument of the motion for a new trial, (which was long after the trial of the action,) and it does not appear in the tran-

script.   The court below did not pass upon it.   How then can the plaintiffs avail themselves of it, even if it has any merit?  (7 Nevada, 408, 415; 6 id., 377; 24 Cal., 398; 18 id., 83; 2 Cush., 27; 1 Cowen, 622; 1 Wend., 418; 9 Kas., 511.) If it was necessary to offer any additional evidence to make the records offered admissible, if the attention of the court or counsel had been called to it in the court below, it might perhaps have been remedied.   There might have been further and additional qualifications of the viewers, on file in the office of the county clerk, which might have been produced if attention had been called to the fact, that there was an *appearance* of qualification before the surveyor.

But if the viewers should have been qualified before some other officer and were not, (and still they may have been,) nevertheless they were viewers *de facto*, and their proceedings cannot be attacked collaterally.

2. It was proper, but not necessary, for the defendants to prove that the signers of the petition were householders of the county, and resided in the vicinity where the road was to be laid out. (Gen. Stat., 897, ch. 89, § 1; 2 Wis., 129.)   The plaintiffs however objected to defendants making this proof, and cannot now be heard to complain because it was not done.

3. This was an action of trespass against the road overseer and his servant, and is a collateral and not a direct attack upon the proceedings of the commissioners.   It appears from the records offered and received in evidence that the "report, survey and plat" had been recorded, and for the purposes of this action at least said road must be "considered a public highway." (Ch. 89, § 6, p. 901, Gen. Stat.; 1 G. Greene, 439.) This entire case is really covered by *Beebe v. Scheidt,* 13 Ohio St., 406.   Our road statute is taken from the Ohio statute therein referred to, and that decision is part of the law of this state. (*Stebbins v. Guthrie,* 4 Kas., 353.)   See also 12 Ohio St., 642, and 16 Wis., 224.

4. The road was at least 40 feet wide. (§ 31, p. 907, Gen. Stat., 1868.)   It was in the discretion of the commissioners

to establish the width of the road, but in this case the statute makes it at least 40 feet; and unless the commissioners make a different width, 40 feet will be the established width by law.

5. Any person who wishes to use a highway which is unlawfully obstructed, may remove such obstruction whether he be an officer or not. (18 Wis., 265.)

6. It was not necessary that record evidence should be offered to show that defendant Sproule was overseer of highways. If he was acting in that capacity it was sufficient. Besides, in the answer it is alleged that he *is* such overseer, and it is not denied under oath. Code, § 108.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of trespass *quare clausum fregit;* but the real question in litigation was, whether a certain supposed county road had any legal existence or not. If the road was legally established, or if it was established in such a manner that it had any legal existence, then there was no trespass; but if the road was wholly void, then the alleged trespass was actually committed. The question of the legal existence of said road arose upon a motion for a new trial. The court below found that the road was legally established, and had a legal existence. Now, if this finding was sustained by sufficient evidence, then the motion for the new trial was rightfully overruled, but if it was not sustained by sufficient evidence then the court below erred in overruling said motion. The question as it comes to us is, whether the evidence is sufficient to show *prima facie* that the road was legally established. Many other questions were raised in the court below, but they can hardly be considered as being involved in the case, as the case is presented to this court. Many objections were made by the plaintiffs below (plaintiffs in error,) to the introduction of certain portions of the evidence, but the objections, with one exception, were too

1. Objections to evidence.

general to be available. The objections were made without giving any reasons therefor. This was not sufficient. (*Luke v. Johnnycake,* 9 Kas., 511, 518;

*Simpson v. Kimberlin,* 12 Kas., 579; and also, cases cited in defendants' brief.) The objections should have been specific, and should have designated the grounds upon which the objection was founded. Another question was raised by the plaintiffs by excepting to the exclusion of certain evidence offered by themselves. All of these questions necessary to be considered will be considered in their proper order.

After a careful consideration of the question we have come to the conclusion that whenever the records and files of the board of county commissioners purporting to establish a county road are regular in form, and contain everything which the statutes require to be preserved and kept in such cases, such records and files will prove, *prima facie* at least, that such road has been legally established and has a legal existence, and therefore that there is no necessity in the first instance to resort to evidence *aliunde* to prove the legal existence of the road. Such ought to be the law, and especially so where the existence of the road is attacked collaterally, as in this case. The strongest reasons, and some very high authority, sustain this view of the law. (*Anderson v. Comm'rs of Hamilton Co.,* 12 Ohio St., 635, 642; *Beebe v. Scheidt,* 13 Ohio St., 406, 418.) If such were not the law it would be dangerous for any man to travel a road against the wishes of the owner of the land. The records of the county would be no protection to him, and he might be unable to procure evidence *aliunde* to show that the road had ever been legally established. And to show that the road had been legally established in one suit, would be no evidence of such fact in another suit instituted against some other person, or even against himself for some other supposed trespass. Of course we do not wish to be understood as deciding that the records of the county commissioners are more than *prima facie* evidence of the establishment of the road; for we suppose that generally, if not always, jurisdictional facts may be proved or disproved by evidence *aliunde,* for the purpose of sustaining or invalidating the proceedings of a tribunal of special and limited jurisdiction, such as the board of county

2. Records of county board.

commissioners is. In the present case everything necessary for the establishment of said road seems to have been preserved, and the proceedings for the establishment of the road seem to be sufficiently regular to make the same valid.

It is true, the notices required to be given under §§ 3 and 4 of the road law, (ch. 89, Gen. Stat., p. 898,) do not seem to have been preserved, but it was not necessary under the law as it then existed (1870) that said notices should have been preserved, or that any record should have been made of them. It is otherwise now. (Laws of 1874, pp. 165, 166, §§ 3, 4.) Besides, one of the plaintiffs petitioned for said road, and instead of receiving a notice from some one else should have given the notices to others; (§ 4 of the road law.) And the other plaintiff made a voluntary appearance through counsel, and probably he did not need any notice. With regard to the notices required to be given under § 3 of the road law it is provided that "on the petition being presented, *and the commissioners* SATISFIED *that notice has been given as aforesaid,* they shall appoint three disinterested householders of the county as viewers," etc. From this it seems that the commissioners must examine and determine for themselves whether said notices were given or not. That is, before they proceed further they must be "satisfied" that said notices were given, and in becoming satisfied that said notices were given they act in a *quasi* judicial capacity; (*Anderson v. Comm'rs of Hamilton Co.,* and *Beebe v. Scheidt,* supra; *State v. Augusta,* 46 Me., 127;) and their determination upon the matter, whatever it may be, is at least *prima facie* evidence of the truth of their findings. With regard to the notice required to be given under § 4 of the road laws, see the case of *Leavenworth Co. v. Epsen,* 12 Kas., 531, and cases there cited.

3. Notices of petition for road, and for viewing road.

While it is necessary that the petition for laying out a road should be *signed* by at least twelve householders, yet it is not absolutely necessary in order to make the road valid that the *petition itself* should show upon its face that all or any of said signers are householders. The statutes do not require anything of that kind.

4. Petitioners for road.

The order of the county board appointing the road viewers was substantially in compliance with the statutes; and such

5. Appointment of viewers.

a compliance we think is really all that is necessary. While superior courts should rule strictly so as to keep inferior tribunals within their proper jurisdiction, yet superior courts should rule liberally with regard to the language used by inferior tribunals and with regard to the mere forms of their proceedings. (*Beebe v. Scheidt,* supra.) Besides, if said order were considered really irregular, still mere irregularities could not be taken advantage of in this collateral way.

The viewers did not report upon the width of the road as required by section 31 of the road law. (Gen. Stat., 907.) The

6. Width of road.

road will therefore under said §31 be forty feet wide. This failure to determine upon the width of the road will not invalidate the road.

Section 5 of the road law, (ch. 89, Gen. Stat., p. 899,) requires that the viewers shall before they proceed to view the proposed road take an oath to faithfully and impartially dis-

7. Qualification of viewers.

charge their duties; but the statute does not anywhere require that this oath shall be preserved, or that any record shall be made of it. Now, whether the want of an oath on the part of the viewers would invalidate the road when attacked collaterally, as in this case, may be questioned. The cases referred to by plaintiffs are all or nearly all where the validity of the proceedings in establishing the road are attacked in a direct proceeding, such as *certiorari*, appeal, petition in error, *supersedeas*, etc., and hence such cases do not apply in this case. But we do not think that it appears in this case that no oath was taken. The viewers make their report in writing, putting in everything required by the statute except the width of the road, and then sign the same. Immediately following their signatures are the following words, to-wit: "Qualified by James F. Foreman, county surveyor." And then follows the surveyor's return, which includes the map and field-notes of the survey of the proposed road. Now whether the commission-

ers were qualified to their report, or to something else by the county surveyor, does not appear. Or whether it was the report itself that was qualified, (that is, limited, modified, varied,) by adding on the surveyor's return, is left unexplained. It is certain however that these words alone cannot now prove to this court, against all the presumptions in favor of the regularity of the proceedings of the viewers and of the county board, and against all the presumptions in favor of the findings of the court below, that said viewers were not sworn before they commenced to view and lay out said road, or that they were not sworn by a proper officer, or that the road was not legally established, or that it is now invalid. The law does not require that the viewers should be sworn to their report, nor does it require that they should be "qualified" to the same.

There was no separate report by the viewers, under § 7 of the road law, (Gen. Stat., 900,) as to the amount of damages which they allowed. But the report of damages was made by amending the original report by adding the following words, to-wit: "And we awarded Ole Clemenson $25 damages, no other parties claiming any;" and this amendment was made by two of the commissioners only. This was a great irregularity, but it was only an irregularity. It did not invalidate the proceedings. The whole report including the amendment was made within the proper time. It was then acted on by the county commissioners. The county commissioners established the road. The commissioners had jurisdiction of the subject-matter of the proceedings. Their determination was in the nature of a judicial determination, and cannot be attacked collaterally for mere irregularities. The statute provides that, "It shall be the duty of the commissioners, on receiving the report of the viewers aforesaid, to cause the same to be read before their meeting, and, if no legal objection shall be made to said report, or sustained by a majority of said board of commissioners, *and they are satisfied that such road will be of public utility,* and the report of the viewers being favorable thereto, they

*8. Award of damages.*

shall cause said report, survey, and plat to be recorded, and from thenceforth said road shall be considered a public highway." (Gen. Stat., 900, § 6.)

The plaintiff objected to parol evidence being introduced to show that the defendant Sproule was road overseer "on the ground that if he was such officer there should be record evidence of the same." The objection was rightfully overruled. (*Prell v. McDonald*, 7 Kas., 426, 444, 445.) It is certainly the rule that when a person is sued for an act done by himself, for the doing of which he justifies as an officer, he may always, in the first instance, show by the introduction of parol evidence that he was, at the time of the commission of the act complained of, such officer *de facto;* for such evidence is *prima facie* evidence that he was such officer *de jure.* But even if it were error in this case to admit such evidence, still the error would be immaterial, for the act done was the removal of an obstruction from a road so that the road could be traveled, and this any person had a right to do whether he was an officer or not.

*9. Action against officers.*

We have had considerable trouble with road cases. It would seem that no road can be established without some irregularities intervening. And if mere irregularities in the establishment of a road will invalidate the same, then nearly every person who travels upon a supposed road without the consent of the owner of the land, express or implied, commits a trespass for which he might be made to answer in damages. We have therefore considered very carefully the question as to how irregularities committed by county commissioners and other inferior tribunals should be considered by superior courts. Now, much that comes within the scope and jurisdiction of county commissioners is judicial in its nature. Indeed the greater portion of the proceedings of county commissioners in the establishment of county roads is judicial in its nature; and whenever the commissioners act in a judicial or *quasi* judicial capacity their proceedings are entitled to about the same respect from superior courts and elsewhere as the proceedings

*10. Proceedings and records in road cases.*

of other tribunals of special, limited and inferior jurisdiction. That is, when inferior tribunals go beyond their jurisdiction their proceedings are void; but while they keep within the strict limits of their jurisdiction their proceedings are valid, notwithstanding irregularities may intervene. Much however that comes before county commissioners is ministerial in its nature. Then how are their proceedings, when they act ministerially, to be considered? Much the same, we think, as when they act judicially, except that when they act ministerially irregularities will sometimes invalidate their proceedings. We think the true rule will be found to be, even in such cases, that while superior courts should rule strictly so as to keep inferior tribunals within the strict limits of their jurisdiction, yet they should rule liberally in other respects so as not to invalidate the proceedings of such inferior tribunals for mere irregularities. Even with a liberal ruling the proceedings of inferior tribunals, where they act ministerially, would often have to be considered invalid. But with as strict a ruling as the plaintiff in error contends for probably nearly every road in the state would have to be declared invalid.

The judgment of the court below is affirmed.

All the Justices concurring.