## W. J. OLIPHANT V. COMM'RS OF ATCHISON COUNTY.

1. INJUNCTION, *By Land-Owner; Road Overseers.* A party purchased a tract of land over which was a road used and traveled upon by the public as a public highway, but which he claimed was so used and traveled upon without ever having been in any manner legally appropriated to the public use. After his purchase he attempted to fence up his tract of land, and close up the road. The authorities resisted his attempt, and prevented him from closing up the road: *Held,* That injunction to restrain them from further interfering with his closing up the road was a proper remedy.

2. HIGHWAY; *Prescription; User; Limitation.* The public acquire no right to the possession of a highway by mere prescription, any sooner than an individual does to land he occupies. Use of a highway for five years vests no title to it in the public as against the prior owner; and if at the end of five years he attempts to take possession, and such attempt is resisted, an action of injunction is not barred by any statute of limitations.

3. ———— *Laying out Highways; Powers of County Commissioners.* Under the general grant of power in section 16 of the act concerning counties and county officers, "to lay out, alter or discontinue any road," and in disregard of the proceedings prescribed in the statute concerning roads and highways, the county commissioners have not power of their own motion, and without a previous petition, to cause a road to be laid out and opened by viewers by them appointed.

4. ———— *Qualifications of Petitioners for Highway.* Where neither upon the papers nor the proceedings of the county board does it affirmatively appear that at least twelve of the petitioners were householders, resident in the vicinity of the proposed road, and the proceedings are attacked directly by *petition in error,* the defect is fatal, and the proceedings must be set aside as void. When attacked collaterally, the fact that such petitioners are qualified householders may be shown by testimony *aliunde* the record; and when no such testimony is offered, the party who produces the record, and rests upon it alone, has made out a *prima facie* case that the proceedings were void, and is entitled to judgment accordingly.

5. FINDINGS OF FACT; *What to Contain.* Findings of fact should not be recitals of testimony, but statements of the facts deemed by the court to have been proved by such testimony; and a recital in a finding, that such evidence was or was not given, may be entirely ignored.

### *Error from Atchison District Court.*

INJUNCTION, brought by *Oliphant* against the *Board of County Commissioners* of the county of Atchison, and *John*

*Moore*, as trustee of Walnut township, Atchison county, and *Henry Socks*, as overseer of road district No. 2 in said Walnut township, to restrain and enjoin them from exercising any further jurisdiction or control over plaintiff's land for the purpose of a public road, highway, or other public road use. The district court, at the June Term 1875, refused the injunction prayed for, and gave judgment against *Oliphant* for costs. Plaintiff now brings the case here for review. The facts will appear in the opinion.

*W. W. Guthrie*, for plaintiff, contended that injunction is proper remedy of land-owner to prevent appropriation of his land for a road; (30 Md. 436, 445;) that the same reason governs in preventing unauthorized use, as unauthorized opening. In no other action can the entire case be finally determined. In trespass for throwing open a fence, (as in *Willis v. Sproule*, 13 Kas. 257,) only between the parties, is the case *res adjudicata;* not in a prosecution for obstructing a road, under § 17, p. 904, Gen. Stat. Here the public, by its proper road authorities, and the land-owner, are before the court, and their respective rights adjudicated, and thereafter their privies are bound; (see §§ 6, 13, ch. 89, Gen. Stat.; Laws of 1871, p. 338.) No legal steps were taken to lay out this supposed road under § 1, ch. 89. Only a petition, by "persons liable to do road work," to "the commissioner of highways in Walnut township," was signed, and no bond was given. Under § 2, such petition, when presented, was for a road one mile long, one half-mile west of this location, and contained no description by natural objects. Under § 3, previous notice must have been given "by advertisement set up in the county clerk's office, and in Walnut township." No such notice was given. All such requirements were jurisdictional facts; (12 Kas. 315–322; 8 Kas. 248–256.) How, except from notice as required, could the land-owners know that their land was to be taken for a road, or have an opportunity to contest such proceedings, or claim damages for land taken? (§ 4, art. 12, Const.) The road pro-

ceedings were in a court of limited jurisdiction, and defendants must affirmatively show valid proceedings; 19 Johns. 33; 5 Cranch, 173; 8 Cowen, 311; 2 Phil. on Ev. 906. While such jurisdictional facts may not appear by record, they must *in fact* exist, and be proven in a controversy where a claim of right is made thereunder. When plaintiff showed the record, which showed the proceedings void, and that a valid road was claimed thereunder, and actually kept open by defendants under claim of valid proceedings, his case was *prima facie* made out. Plaintiff bought of Henderson and Taylor, who owned the land in 1870, when the road proceedings were had. He now occupies their place. If they still held title, and could sustain this action, so can plaintiff. If such proceedings are valid, then the road exists, and no one can controvert; while if invalid, plaintiff is landowner, and entitled to his land. Neither does limitation apply. Easement, like title, is only acquired by purchase or prescription, and prescription requires fifteen years. If suing in trespass, limitation would cut off only damages back of two years.

*D. Martin*, for defendant, maintained that the authority of the county board "to lay out, alter or discontinue any road running through one or more townships in such county, and also to perform such other duties respecting roads as may be provided by law," is given in broad terms; Gen. Stat. 257, § 16. If no other statute restrained or qualified this power, the county board might act without any application, and without notice. The act in relation to roads and highways does not expressly limit, restrain, or qualify this power. When an application is made by twelve householders, and a bond entered into as provided in § 1, and the notice given as required by § 3, then it is the *duty* of the board to act; but the *right* of the board to act on its own motion, is not negatived. Our laws furnish many analogous cases; a reference to one will suffice to illustrate: It is the *duty* of a disqualified judge to grant a change of venue under the act of

1870, when application is made by either party; while if no application be made, he may, *of his own motion,* either change the venue, or order the election of a judge *pro tem.;* ( 8 Kas. 628.) It may well be questioned whether any application, bond, or notice is necessary to authorize the county board to lay out and open a highway. This court has held that the notice to the land-owner required by section 4 is not jurisdictional; (12 Kas. 531.) This notice is intended to apprise the land-owner directly, if residing in the county, that his land or a portion thereof may be required for public purposes, so that he may appear at the proper time and place to protect his interest. Now neither the application nor the notice advertised in a newspaper, and posted in the township, seems to be intended for the benefit of the land-owner; for it is only required that the application and the notice shall state "the place of beginning, the intermediate points, *if any,* and the place of termination" of the road; (Gen. Stat. 898, §§ 2, 3.) We suppose a petition or application and notice for opening a road "from Lancaster to Atchison," or, "from Muscotah, via Effingham and Monrovia, to Atchison," would be sufficient; and yet no land-owner would know therefrom that the taking of any part of his land was contemplated. It has been repeatedly decided in New York, that commissioners of highways may, upon their own motion, and without any application therefor, lay out a highway. 20 N. Y. 252, 255; 28 N. Y. 297, 305; 19 Barb. 179, 187, 189.

The plaintiff rested his case upon proof that he bought twenty acres of land nearly a year-and-a-half after the opening of the road on the west line of the tract, well knowing of the actual existence of the road. He then assumed that it lay upon the defendants to show that every proper step was taken for a statutory appropriation of the land of his grantor to public use as a road. The exhibit attached to plaintiff's petition, shows that a written application, signed by more than twelve persons, was presented to the county board. The plaintiff does not attempt to show that they were not "householders of the county, residing in the vicin-

ity" of the proposed road, but assumes that it devolved upon the defendants to prove that the petitioners were such householders of the vicinity. This point has been expressly ruled against the plaintiff in *Willis v. Sproule*, 13 Kas. 257, 265. He does not even allege in his petition that no bond was entered into as required by § 1 of the road law; but he claims that it rested upon the defendants to prove that such a bond was given, with sufficient security. He does not allege that no notice was advertised or posted as required by § 3, yet it does come out in evidence that such notice was published. But he claims that it was fatal to the defense that we did not prove the posting of the notice in the township and in the county clerk's office. The plaintiff alleges that no legal highway exists upon these premises, and it devolves upon him to show this to the satisfaction of the court, as the first step toward the extraordinary remedy which he seeks. If the application, the bond, and the notice are jurisdictional, and want of jurisdiction is relied upon, then it devolves upon the plaintiff to show the absence of at least one of them. Here he is asserting a right as against the public—attempting to deprive the people of an easement which they have been enjoying for years past. If the public were plaintiffs, asserting against Oliphant as defendant a right not before claimed, and which had been previously enjoyed by him exclusively, the rule might be different. It rests upon the plaintiff to support the allegations of his petition, not upon the defendants to disprove them; (15 Ill. 543.) It is alleged in the petition and admitted by the answer, that the road in question was platted and recorded in the proper public office. It appears from the transcript that all the proceedings were recorded which the law requires to be recorded. And the statute makes this record *prima facie* evidence of the statements therein contained; (Gen. Stat. 264, § 49.) The record is regular, and shows that the viewers were required to and did lay out the road over the southeast quarter. Has the plaintiff disproved this *prima facie* case made against himself? He presents what he claims to be the original application. But for aught

we know, an amended one may have been substituted, and afterward lost from the files. The misdescription was amendable, and as the record is correct and regular, this court should treat the application as amended. ( 53 Penn. St. 387, 390; 15 Iowa, 213, 216.) It is true that the original application presented describes the land as the *southwest* quarter. But it shows the initial point to be White Oak Grove, which was on the south line of the *southeast* quarter. It describes the course of the road as *northwest*, and the terminal point as the Atchison county road at Scruggs' land. This terminal point was in the middle of the north line of the *southeast* quarter. The initial point could not, therefore, be in the *southwest* quarter. It was an impossible description, and a mistake that could not mislead any person familiar with the location. Certain and fixed monuments ought to control, and any mistaken description of the quarter-section should be disregarded. When effect cannot be given to every part of a description of land, what is most certain and material should control: 3 Washb. on Real Prop. 350; 4 Mass. 196; 2 Cush. 392; 1 Cow. 605; 36 N. H. 91; 6 Gray, 467, 471, 472; 5 Met. 15. *Id certum est quod certum reddi potest.* And as a discretion is vested in the viewers in the selection of the route, the courts will not interfere unless to prevent its abuse. As to departures held not to vitiate: 64 Penn. St. 137; 5 Allen, 221; 14 Kas. 478.

The rights of the plaintiff can in no event be superior to those of his grantors, but may be inferior, as we think they are in this case. Henderson and Taylor, plaintiff's grantors, could not have maintained such an action as this. They resided in Leavenworth county, and it was therefore unnecessary to give them the notice required by § 4 of the road law. Henderson consented to the opening of a neighborhood road, without compensation, in the very place where the road is now located and used. And before the road was established, both Henderson and Taylor were notified of the action of the viewers and the proposed taking of their land, and they fully understood that they might claim damages; and yet they

did not do so. The plaintiff claims that this finding is improper; but this is scarcely debatable; for, besides being without merit, this objection is not properly presented in the record, and the court should disregard it, because the objection to the evidence on which the finding is based is not specific, and because it is not presented either in a bill of exceptions, or case made; and its insertion in the journal entry was improper. Again, a verbal consent to the appropriation of land for public purposes is sufficient. "The owners of the land were not contesting, and by their claiming no damages were consenting· to such location and use." The plaintiff is chargeable not only with his own knowledge of the proceedings, but also the acquiescence of his grantors, and the delay of himself and his grantors in commencing an adversary proceeding. The road was in actual use between four and five years previous to the commencement of this action, and the plaintiff knew all this time that it was established by the proper authorities of the county, and duly platted and recorded.

If the plaintiff ever had a cause of action, when did it accrue? We think it accrued to his grantors in August 1870, when the road was officially established and opened with their knowledge; and by the conveyance to the plaintiff, his right of action, if he obtained any under the purchase, would relate back to that period. But even if such right of action did not accrue to him until his purchase, still it is barred, for he obtained his deed December 7th 1871, and did not commence his action until February 5th 1875. (Gen. Stat. 633, §18, clause 3.) But waiving, for the present, the consideration of the statute of limitations, and granting that Henderson and Taylor had a cause of action of some kind, it does not follow that the plaintiff obtained it by procuring a deed for the land. The authorities establish the doctrine that he did not. He cannot maintain this action, nor any other kind of an action in the premises; 13 Barb. 646, 654; 32 Texas, 723; 5 Dutcher, 206, 213. He is not even entitled to the damages which Henderson and Taylor

might have legally claimed at the time. Those damages are only recoverable (if at all,) by H. and T.; 11 Rich, Law, 91; 25 Wis. 641, 643; 26 Vt. 670; 72 Penn. St., 335. According to the plaintiff's own showing, it was the real estate of Henderson and Taylor that was injured. They might insist upon or waive any right or claim which they had against the public. Oliphant had no interest in the matter; he had no right to object to the proceedings to establish the road; he could not appeal from the action of the board in failing to award damages. The law does not permit him to get into a controversy with the public by a purchase of the land.

The opinion of the court was delivered by

BREWER, J.: This is a road case, an action in which the present owner of a few acres attempts by injunction to close up a road opened and used by the public over said tract long before he acquired any title thereto. The facts are these: For several years past the plaintiff has resided, his wife being the owner, upon the N.W.¼ of S.E.¼ of section 24, township 7, range 21, in Atchison county. While thus residing, and in June 1870, a petition was presented to the county board for a road which was intended by the petitioners to cross the S.E.¼ of section 24, but in fact named the S.W.¼ of said section. The road was simply to cross the quarter-section. The description in the petition as it now appears reads, "a road commencing at about thirty rods west of the southeast corner of the S.W.¼ section 24, T. 7, R. 21, and on the south line of said quarter, thence running in a northwesterly direction to the north line of said S.W.¼, about eighty rods from the northeast corner of said quarter of section 24, township 7, range 21, and intersecting the Atchison county-road at S. Scruggs' land." In the petition as originally brought to the county clerk's office the initial point was described as, "White Oak Grove, on the Leavenworth county-road," but was at the time of filing changed by the clerk, with the consent of the principal petitioner. The mistake in the description was one that could

26—18 KAS.

not, as the court finds, have misled any one familiar with the locality. At this time the N.E.¼ of the S.E.¼ was owned by Henderson and Taylor, and the west sixty acres of the S.½ of S.E.¼ by one James Boton, and the east twenty acres by one Cook. "At the time," as the findings go on to read, "the viewers met to lay out a road under the order issued on such petition, the plaintiff met such viewers near the southeast corner of said southeast quarter, where they proceeded to begin the location of such road under such order, and demanded to see their authority for laying out such road. The surveyor exhibited the order of the county board requiring such road laid out as now described in such petition, and plaintiff then notified said viewers and surveyor that they were then half-a-mile east of the proposed location of such road, as called for in such order, and then denied their right to proceed to lay out a road anywhere on such southeast quarter, but under such order they must go half-a-mile west of where they then were, to locate such road.

"On further conversation, Oliphant offered to permit the road to run across the northwest quarter of said southeast quarter, on the line of the old Indian trail, for $500, or to permit it to run on the east line, giving one-half the road, for $200, which the viewers declined to give; and on the representation of a bystander, that Henderson and Taylor would give the right-of-way for such road over their land, the viewers informed said Oliphant that they would not take any of said northwest quarter of said southeast quarter, but would locate the road east of the east line of said northwest forty acres; and thereupon Oliphant said that he had nothing to say, if they did not disturb his forty acres. And the said Oliphant then went away, and said viewers then proceeded to lay out such road on the west side of the northeast quarter of said southeast quarter, taking forty feet off said west side, and allowed damages to Boton, but none to Cook, or Henderson and Taylor, over whose land the road was located; and no damages have ever been allowed or paid for the location of such road across the northeast quarter of said southeast quar-

ter. The said Henderson and Taylor resided in Leavenworth county.

"Neither Henderson nor Taylor was present; and the entire road, forty feet wide, was located on the west side of their land, and from a point on the county-line about thirty rods west of the southeast corner of the southeast quarter of said section, thence northerly to the center of said quarter, thence due north across said quarter, the initial point as actually located being at White Oak Grove, on the line of Leavenworth county, and the terminal point being at the intersection of the Atchison road at Scruggs' land.

"After the report of said viewers was confirmed, such road was cut out through the timber on said land, twenty feet wide, and the timber thrown to one side, and left there, and a road as so opened, has, ever since August 1870, been opened and traveled as a public highway, the same having been opened by the road overseer by order of the board of county commissioners, of which fact plaintiff had full knowledge."

Neither upon the face of the petition, nor upon the county records, does it appear affirmatively that the petitioners were householders. The language of the petition is, "the undersigned persons liable to be assessed for highway labor." And it is stated in one of the findings, that "no evidence was offered showing that any of the signers to such petition were householders of said county, or that any bond was entered into, or that any notice that such petition would be presented was given by any advertisement set up in the county clerk's office, and in the township of Walnut in which such proposed road was designed to be laid out; but the then county clerk was a witness, and testified that he filed all papers and proofs brought to his office in such matter, and had no knowledge of any notice whatever having been given, and he thought that the change in the description in such petition was in fact made at the time when the county board acted on same on July 8th. The above finding is made because true, and to avoid a formal bill of exceptions."

The report, survey, and plat seem to be regular, and duly

recorded. In December 1871 plaintiff bought the W.½ of N.E.¼ of S.E.¼ of section 24 from Henderson and Taylor, and received a warranty deed therefor. After plaintiff's purchase in 1871, he petitioned the county board for a vacation of this road, and appealed from the decision of the board to the district court, but thereafter dismissed the appeal, and in February 1875 commenced this action of injunction. It also appears that he cleared up a portion of this twenty acres, and made several attempts to fence up the cleared land, together with the road, but was each time prevented, so far as the road is concerned, by the defendants. The testimony taken on the trial was not preserved, so that we have only the pleadings and findings before us. To the petition was attached a transcript of the record and papers in the proceedings of the county board.

Upon these facts we remark—first, that injunction is a proper action in a case like this; that a party having the legal title to and right of possession of a tract of land, upon which the public, without any legal authority therefor, is claiming an easement in the shape of a highway, may, if his attempts to take possession of said apparent highway and close it up are resisted by the public authorities, maintain injunction to restrain them from further interference with his rights. We do not decide that this is the only remedy he may pursue, but that it is an adequate and proper one.

II. The statute of limitations has not run against this action. While it might have run as against an action of trespass, for the first opening of the road, yet the public acquire no rights to the possession of property, by mere prescription, any sooner than individuals; and the mere occupancy of land by the public for a highway for a period of five years, vests no title thereto in them, and at the end of the five years the owner may attempt to take possession, and if resisted may maintain injunction to restrain such resistance.

III. Plaintiff was in no manner estopped by what took place at the time of the meeting of the viewers from now

asserting his claims to the land occupied by the highway. All that he did then was to maintain his rights to the land he was interested in as occupant, and husband of the owner. And when they were secured, and the viewers agreed to locate the road over other lands, his right to make objection ceased, and a mere declaration that he had nothing further to say, did not estop him from thereafter asserting full title and right of possession to land subsequently purchased, even to the extent of disputing the validity of the road then attempted to be laid out over the land thus purchased. Scarcely a single element of estoppel is present. *Clark v. Coolidge*, 8 Kas. 196.

IV. The proceedings in this case for the laying out of the road cannot be sustained under the authority granted in section 16 of the act concerning counties and county officers, (Gen. Stat. 257,) to county commissioners "to lay out, alter, or discontinue any road running through one or more townships in such county, and also to perform such other duties respecting roads as may be provided by law," and independent of the provisions of the act concerning roads and highways. (Gen. Stat. ch. 89.) For if it were conceded that said section 16 grants authority to the commissioners of their own motion, and without previous petition, to lay out a road, yet such grant of power would not carry with it authority to delegate the power to others, and the road in this case was not laid out by the commissioners, but by viewers appointed by them. *Qui facit per alium, facit per se*, may be true of individual action, but is not of official and quasi judicial action. The authority to appoint viewers is contained only in chapter 89, above cited; and for the proceedings prescribed in that chapter a petition is an essential prerequisite.

V. Whether the rule be, in cases of this kind, that the burden of proof is on the plaintiff to show that the road proceedings were void, or upon the defendant, after plaintiff's proof of title to the land, to show that they are valid, need not be decided; for conceding (though only for the purposes of this case) the former to be the correct rule, yet, if the pa-

pers and proceedings before the county board when offered in evidence by the plaintiff do not upon their face show jurisdiction, he has made out a *prima facie* case, and is not compelled to go outside the record and prove by parol the non-existence of jurisdictional facts. In other words, he may rest upon the record, if the record fails to show jurisdiction. There is no presumption in favor of tribunals of limited and special jurisdiction of the existence of facts outside of those named in the record. A party asserting their existence, must prove them, or the case will stand as though they did not exist.

VI. A petition signed by at least twelve householders, is a condition precedent to the exercise of any authority on the part of the commissioners under the roads-and-highways act. Its existence is a jurisdictional fact. (*Willis v. Sproule,* 13 Kas. 257; *Comm'rs Wabaunsee County v. Muhlenbacher,* ante, 129, 132.) If the record upon its face fails to show affirmatively the existence of this fact, the proceedings will, when attacked directly by petition in error, be held void; (ante, p. 132.) If attacked collaterally, as in this case, doubtless the fact that the petitioners were householders, and residing in the vicinity of the road, might be proved by evidence *aliunde* the record; (*Willis v. Sproule,* 13 Kas. 257, 264, and cases there cited;) but if not thus proved, and the record does not disclose the fact, the proceedings must be held void.

We have been not a little embarrassed by the effort of counsel to make a finding serve the purpose of both a finding, and a bill of exceptions. The purposes and scope of the two are entirely dissimilar. The one narrates the evidence as it is offered, the other states the facts the court finds to have been proved by such testimony. The one states what took place at the trial, the other what existed before suit was commenced. A statement therefore, in a finding, that such evidence was or was not given, may be entirely ignored. At first we were of the impression that this would compel an affirmance of the judgment, and are far from clear that such ought not to be the decision. But to the petition is attached

the record of the proceedings before the county board, and this record is not denied in the answer. This record fails to show that the petitioners were householders. *Prima facie* it shows that the county board had no jurisdiction, and that the proceedings were void. This record was in evidence. There is no finding that the petitioners were householders, none that a sufficient petition was presented, and no fact stated anywhere in the findings from which it can be inferred that a sufficient petition existed. We therefore, though with grave doubts of the correctness of the ruling, order that the judgment be reversed, and the case remanded for a new trial.

All the Justices concurring.