## CHESTER BEEBE v. PETER SCHEIDT ET AL.

1. Where, in an action for trespass upon lands, the defendant justifies that the acts complained of were done by him as supervisor, in opening a public high-way over the lands, the record of the proceedings of the county commission-ers, in regard to the road, is not incompetent evidence, because it terms the petitioners for the road "landholders," instead of freeholders, nor because the viewers are not described as "disinterested freeholders" of the county; nor because it does not show that the plaintiff had notice of the time and place of the meeting of the viewers.
2. It is not competent for the plaintiff in such cases to introduce parol evidence to show that such record was unauthorized by the commissioners, or that the road was not legally laid out, nor to show that the plaintiff had no notice or knowledge of the meeting of the viewers, or of the location of the road.

ERROR to the court of common pleas of Lorain county. Reserved in the district court.

The original action was brought by Beebe against Scheidt and others, before a justice of the peace, and was in the na ture of an action of trespass.

Upon appeal to the court of common pleas, the plaintiff filed a petition charging the defendants with unlawfully tres-passing upon his land.

The defendants justified the alleged trespass, and claimed that Scheidt, one of the defendants, was supervisor in the road district in which the plaintiff's land was situated, and that he had received an order from the county commissioners

commanding him to open the road through the land; and that, taking the co-defendants as his servants, he went on to the plaintiff's land and opened the road across the same, doing as little injury as possible.

The plaintiff replied, taking issue upon the answer.

Upon the trial, a bill of exceptions was taken by the plaintiff, from which it appears that the plaintiff gave evidence tending to prove the facts stated in the petition, and rested his case; and that thereupon the defendants called William H. Root, who testified that he was the auditor of said county, and had been such auditor ever since the year 1855; and that said Root produced a book entitled, "Record of Roads of Lorain County," which he stated was the record of roads of said county; and that said record was kept in his office, under his care; and that the entry in said book, a copy of which, marked "exhibit A" in the exceptions, was in the handwriting of his clerk, and shows, in substance, that at the session of the county commissioners, begun and held on the 1st of September, 1856, Scheidt, the first of twelve landholders, signers of a petition for the establishment of the road, presented the petition to the commissioners then in session, who, being satisfied that the petitioners had given the notice required by the statute, caused the petition to be read in open session (said Scheidt being bail for costs), and appointed a committee of three persons and a surveyor (naming them) to view the road on the 20th of October, 1856, and report at the next meeting of the board of commissioners. That the members of the committee and the surveyor were sworn (as were also the chain carriers and markers) and proceeded to view and survey the road, particularly described on the day designated, and reported in favor of its being laid out and opened forty-six feet wide. The committee report that they assess no damage to any one on the road.

Said Root also produced another book, entitled the "Journal of the County Commissioners" of said county, and testified that the journal was the journal of the commissioners, and contained the only record of their official proceedings, except said road record.

Thereupon, for the purpose of laying the foundation for the admission of the entry in said "Record of Roads," the defendants read to the court, and not to the jury, the entry, in said journal, of the county commissioners, marked " D." This entry recites, in substance, that, at the December session, 1856, of the commissioners, the committee appointed, at the September session, to view the road, made a report which was accepted, and ordered to be recorded. And said journal recites that this session of the commissioners was a regular meeting, held by them at the auditor's office, on December 1, 1856.

Upon the crossexamination of Root, he testified that there were but two other entries concerning the road, copies of which constitute exhibits " B " and " C," in the bill of exceptions.

Exhibit " B " shows that, at the June term, in 1856, of the board of commissioners, Scheidt was one of the signers of a petition for a committee to view and lay out the road, and that the commissioners appointed a committee and surveyor to view the road, and report at the next stated meeting of the commissioners.

Exhibit " C " states, that, " at this meeting," no report was made by the committee on the road, that a new bond for costs was given, and a new order made on the committee for the view and survey of the road, on the 20th of October " next."

The plaintiff, upon such crossexamination, offered to read the evidence contained in exhibits " B " and " C " to the court, to show, with the entry so read by the defendants, that the road record should not go to the jury; but the court overruled the same.

The defendants thereupon (the plaintiff excepting) read so much of the record of roads to the jury as is contained in exhibit " A." Defendants also offered evidence to show that Scheidt was the supervisor in the road district, and the other defendants were aiding him as his servants, and rested, without offering any evidence tending to show that an order had ever been issued to open the road.

The plaintiff then offered to prove that he had resided upon

the land for forty years last past, was of full age, and capable of transacting his own business, and that he had never re ceived any notice whatever of the laying out and survey of the road, and that he had no notice whatever of the meeting of the committee to lay out the road and assess damages, and that he had no opportunity of claiming damages before said committee. Plaintiff offered, also, to introduce to the jury the journal of the county commissioners, to show that the road was not legally laid out and established.

The plaintiff offered, also, to prove, by sundry witnesses, that the entry in the record of roads was not made, nor authorized, nor directed by the county commissioners.

Plaintiff offered, also, to show that, within twenty days after the December meeting, in the year 1856, of the commissioners, he went to the auditor's office to appeal the case, if the road had been established or laid out, and that he was then informed by the auditor and county commissioners that it had not been acted upon by the county commissioners, and that no appeal bond could be received; and he offered to prove that no entry had then been made or copied into exhibit "B;" and that the road was not then recorded.

All of which evidence being objected to by the defendants, was ruled out by the court.

Plaintiff offered, also, to prove that Scheidt was the principal petitioner for the road; but the court refused to allow the same to go to the jury; "and refused to allow any parol evidence to impeach the record."

After argument, the plaintiff requested the court to charge the jury:

1st. That the record so offered by the defendants was not of itself sufficient evidence of the establishment of the road therein described.

2d. That the supervisor had no authority to open said road from such record alone.

3d. That the supervisor had no authority to open the road until an order was issued to him for that purpose.

4th. That, under the issue tendered, the defendants must

justify under an order to open the road, and not under a record of a road.

The court refused to charge as requested, in any particular; but charged that the record, a copy of which, marked "A," as above mentioned, was legal and conclusive evidence of the laying out and establishing the road in the record described, and conclusive evidence of the supervisor's right to open the road ; and that it was not necessary for the supervisor to wait for an order to open the road, before opening it.

The plaintiff excepted to the refusal of the court to charge as requested, and to the charge as given ; and, having made a motion for a new trial, after verdict against him, the court overruled the same, and judgment was entered on the verdict.

To reverse this judgment, the plaintiff filed a petition in error in the district court, claiming that the court of common pleas erred :

1st. In admitting the record of roads offered by the defendants.

2d. In ruling out the evidence offered by the plaintiff.

3d. In refusing to charge the jury as requested by the plaintiff, and in the charge as given.

The district court reserved the case to this court for decision.

*Burke & Poppleton*, for plaintiff in error.

*W. W. Boynton*, for defendants in error.

SUTLIFF, C.J.—The board of county commissioners is constituted and made a public municipal corporation, and their powers conferred and their elections prescribed by statute law. Among their duties and powers so prescribed and conferred by statute, in this state, have always been those of laying out and establishing, vacating or altering public highways, and building bridges in the county, as well as to erect public buildings, etc., and assess taxes for defraying the expenses of the county.

The powers and duties of the board of county commissioners have always been very important; and hence the legislature of this state has always, very properly, required that there should be kept a record of the proceedings and doings of this board, although one of very limited juris diction.

Thus, in the first act passed by our state legislature upon the subject—the act of February 13, 1804, entitled "an act establishing boards of commissioners"—we find the following provision: "Sec. 9. That the commissioners shall have a just and accurate record kept of all their corporate proceedings, and for that purpose they are hereby empowered to appoint a clerk, who may or may not be of their own body, as they may deem expedient, whose duty it shall be to keep their records, and to preserve all papers and documents they may direct, and attest all orders and warrants issued by them, and perform every other service that may appertain to his office as clerk," etc.

And although ever since the 1st day of March, 1821, the county auditor has by statute been made, by virtue of his office, clerk of the board of commissioners, the board has ever since continued, by requisitions of the statute to that effect upon the commissioners, or upon the auditor as their clerk, to keep a record of their proceedings. The act of 1824 required: "That the commissioners of each county shall cause the auditor of their county to keep a just and accurate record of all their corporate proceedings," etc. And the revisory act of 1831, still in force, provides: Sec. 9. "That the county auditor shall, by virtue of his office, be clerk to the board of county commissioners of his county, and shall keep an accurate record of all their corporate proceedings, and shall carefully preserve all the documents, books, records, maps, and other papers required to be deposited or kept in his office." And the same provision still remains in full force. The duty of making up the record or entry of the action or doings of the board of commissioners, in all their official proceedings, is thus, by the express provision of the statute, devolved upon the auditor, as clerk of

the board.  The auditor was, therefore, a competent and proper witness to prove such record or entries of the proceedings of the board of commissioners as were to be given in evidence in the case.

But the following objections were made to the competency of the record as an item of evidence:

1st. That it does not appear that the county commissioners were authorized by the petition to take any action in the premises, inasmuch as the record does not show that the twelve signers were freeholders; and that, therefore, the whole proceedings expressed by the record are to be regarded *coram non judice*, and the record rejected.

2d. That it does not appear that the committee appointed as viewers possessed the statutory qualifications; nor,

3d. That the committee met at the proper time and place; nor,

4th. That the plaintiff, or any other landowner along the line, had any notice of the time and place of meeting of the committee; and,

5th. That no return of the order appears in the record; nor,

6th. Does it appear that any damages were assessed, or any reason why not assessed; and,

7th. That it does not appear that any order was ever made by the commissioners establishing the road.

Many of the numerous objections urged to the admission of the record in evidence, must certainly be regarded as novel.  Such is the objection, that the commissioners have described the petitioners "landholders" instead of "freeholders."  The former was doubtless to them the most expressive term, although the latter is the statutory and more proper term.  But the words used in the record, in the absence of any proof to the contrary, must be presumed to be synonymous with the term "freeholders."  It is true, the statute requires the commissioners, on being satisfied that notice has been given, "to appoint three disinterested freeholders of the county as viewers;" and the record only recites the fact that the commissioners, after being satisfied

of the notice having been given, appointed James Fields, Barnabas Jackson and S. F. Chapman a committee, and C. G. Cole, surveyor, etc., without reciting, which would have been more proper, the fact that the persons named as a committee were disinterested freeholders of the county. But whatever importance might be attached to this defect in the record, if directly presented in a proceeding to reverse or set aside the action of the commissioners, neither this nor the preceding objection was at all admissible against the competency of the record as an item of evidence.

In reply to the sixth objection—"that it does not appear that any damages were assessed"—even if urged in a proceeding on error to reverse, it would be a sufficient answer to the objection to say it does not appear that any damages were *sustained*.

The fifth objection, even if it existed, as stated by counsel, would hardly have constituted an objection to the admissibility of the record in the trespass suit. But the entry read in evidence, from the "journal of the county commissioners," very clearly shows that the objection did not exist in fact.

Nor does it appear how the seventh objection—the absence of a copy of the order in the record—even if necessary that a written order should have issued, could possibly invalidate the record, and render it incompetent to be given in evidence.

But the 4th objection—want of notice to the plaintiff and the other landowners—is one of a more grave character, and one which calls for a more careful consideration.

It is required by the provisions of the act of January 27, 1853—the road act governing the proceedings—section 5: " That it shall be the duty of the principal petitioner to give at least six days' notice in writing to the owner or owners or their agents, if residing within the county * * * or, if said road is proposed to be laid out on any lands owned by nonresidents * * * to be published for four consecutive weeks, in some newspaper published in the county," etc. Hence, it is insisted by plaintiff in error, and not without some apparent show of reason, that in the absence of the

prescribed notice to him, the proceedings thereafter by the county commissioners were *ex parte, without jurisdiction and void;* and that the record or minutes of the proceedings, were thereafter of no force, and not admissible against him as an item of evidence. And additional force is sought to be given to this argument from the constitutional provision, that " private property shall ever be held inviolate," etc., and that " when taken for making or repairing roads, which shall be open to the public without charge, compensation shall be made to the owner in money," etc.

But to this, it may be replied, that the record shows the notice preliminary to the commencement of the proceedings, as provided in section 4 of the act, to have been given. The provision is as follows : " That previous to any petition being presented for a county road or for the vacation of a county road, notice thereof shall be given by advertisements set up in the auditor's office, and in three public places in each township through which any part of said road is designed to be laid out, altered or vacated, at least thirty days previous to the meeting of the commissioners, at which the petition shall be presented ; also a notice stating the time when such petition is to be presented, and the substance thereof shall be published for four consecutive weeks, before the presentation of such petition, in some newspaper published in the county, in which may be situated the road sought to be established," etc. And it will be seen by reference to the provisions of the road act, that this notice authorizes the commencement of the proceedings, and the action of the commissioners for the laying out of the road. After so giving this reasonable notice, the applicants may require the commissioners to act upon the petition presented by them, in accordance with the notice, and subscribed by twelve freeholders. The commissioners may accept bond with security, appoint viewers to act as a jury, appoint a surveyor, and are required to issue their order directing the viewers and surveyors to proceed, on a day to be named in the order, or on their failing to meet on the day named, then within five days thereafter, to view, survey and lay out, or alter the road, as the case may

be. Now, all these official acts, the commissioners are authorized to do by virtue of the very reasonable notice so given under section 4, to all persons interested. And during their so acting, it can not be pretended that the commissioners have not full authority and jurisdiction; and, all acts by them done in accordance with the statute, are necessarily legal and binding as their official acts.

But the notice so required by section 5, to the owners of land over which the road is to pass, has respect not so much to the laying out of the road, as to the compensation of the owner of the property to be taken therefor; and it is doubtless intended, with the other provisions on the same subject expressed in the act, to facilitate the obtaining compensation by the owner for property so taken for public use. And the act itself thus providing for compensation is perhaps as free from constitutional objection, as if it had provided for an independent action to be brought by the owner against the county for the recovery of the value of his property so taken.

While, therefore, the notice required in section 5, should certainly have appeared in the record, to make the same perfect and conformable to the statute, it does not appear to be such an omission as renders the proceedings while unreversed and in full force, of no effect, and to authorize the court to treat the record as a nullity in a collateral proceeding.

In the absence of a statement in the record of a court of general jurisdiction, of all necessary facts to show jurisdiction, the general rule is, that every reasonable presumption is due to the court in favor of its jurisdiction, when acting according to the course of the common law. It has, however, been doubted whether the rule applies with equal force to the records of such courts in matters properly denominated statutory proceedings. See the cases of the *Heirs of Ludlow* v. *Johnston*, 3 Ohio Rep. 533; and *Sheldon* v. *Newton*, 3 Ohio St. Rep. 494, and the authorities there referred to.

But a different rule is generally applicable to inferior jurisdictions, which are governed in their proceedings strictly by

statutory provisions. The general rule applicable to such inferior jurisdictions is, that in their proceedings they are to be held to the strict limits of their authority, as conferred and prescribed by the statute. And this rule is doubtless applicable to county commissioners as well as to justices of the peace.

There is, however, another rule equally applicable to these inferior jurisdictions, and which, from an early period in our judicial history, has been, I believe, very generally applied to them in this state. While strict in holding inferior courts within the limits of their jurisdiction, as prescribed by statute, superior courts should be liberal in reviewing their proceedings so far as respects regularity and form.

In accordance with this rule, the court say, in the case of *Harding* v. *Trustees, etc.* (3 Ohio Rep. 231): "We have always treated the proceedings of justices of the peace with great liberality and indulgence, and have referred their irregularities, as far as possible, to form, so as to admit of amendment, whenever it could be done without violating any established rule of law or practice."

And such has been the general liberality extended by superior courts to the proceedings of inferior tribunals down to the present time. Indeed, this liberal and favorable regard in sustaining their proceedings, while clearly within their jurisdiction, has ever been extended to inferior tribunals, by this court, even in criminal cases, and where the legality of the proceedings was called directly in question. Thus, in the case of *Scovern* v. *The State of Ohio*, 6 Ohio St. Rep. 288; in a proceeding in error to reverse the judgment of a court of inferior jurisdiction, this court held, that "it is not necessary to the validity of subsequent proceedings, for the examining magistrate to make an entry on his docket, in express terms, that he finds "the complaint to be true;" and held it to be sufficient, if such finding appeared by necessary implication. And yet, in that case, the only provision of the statute authorizing the justice of the peace to bind over the defendant, in that proceeding—for a violation of the liquor law, is the following: "And in all cases of prosecution before

justices of the peace or mayors, if such officer finds the complaint to be true, he shall recognize such defendant or defendants to answer such charge as in other criminal prosecutions of like grade." The court say in that case: "A complaint was duly made before a justice of the peace of the county, by affidavit, against the plaintiff in error, for a violation of the act of May 1, 1854; * * * a warrant was issued, under which the plaintiff in error was arrested and brought before the justice," and witnesses were called and examined; "and thereupon the said Scovern was ordered by the justice to enter into recognizance, * * *, but there is no entry in the docket of the justice expressly declaring that he found the complaint to be true." And this defect was alleged as error. But the court, in their opinion, say: "We think it fairly presumable, from what does appear in the transcript, that the justice did, as a matter of fact, find the complaint to be true."

The opinion of the court, in that case, it is true, was not unanimous; but if the question had there arisen in that case, as it is presented in this—if the constable had been sued in an action of trespass for committing Scovern to jail, and had justified under process regularly issued upon such order—it is difficult to perceive how in such a case, the transcript of the justice could possibly be regarded, by reason of such defect, incompetent evidence for the defense.

The case of *Arnold* v. *Flattery* (5 Ohio Rep. 271) was like the present, an action of trespass, brought by the owner of land against a supervisor who justified, as in this case, by plea that the acts complained of were done by the virtue of his office in discharging his duty within the limits of a highway. To prove his justification, the defendant was admitted to give in evidence a less perfect record of a road than the one under consideration. The road law of February, 1816, under which that road was said to have been laid out, required an application to be made to the commissioners, by petition, particularly describing the contemplated location of the road, etc., and "signed by at least twelve landholders;" and thirty days' notice to be given, etc., preliminary to any

28

authority given the commissioners to proceed in the case. But the record, suffered to be given in evidence in that case, made no mention of either a petition or notice in the case; and yet, the court held the objection, for that reason, to the record going in evidence, not well taken, and that the record was competent evidence in the case.

A majority of the court are very clearly of the opinion, that the absence of any mention in the record of notice, by the principal petitioner, to the landowners, as required in section 5, of the record act, can not, in a collateral proceeding, be regarded as invalidating the record, and thereby rendering it incompetent as an item of evidence.

The 7th, and last objection, urged against the validity of the record, that it does not show any order to have been made by the commissioners, we have already seen, can not be sustained. It is provided by the act prescribing the duties of supervisors, etc., passed February 13, 1853, as follows: " Sec. 12. That it shall be the duty of each and every supervisor, to open, or cause to be opened, all public roads, and highways, which shall have been, or may hereafter be, laid out and established through any part of the district assigned to such supervisor," etc. And the road act (sec. 7), expressly provides, that when the commissioners so cause the report, survey and plat to be recorded, " from thenceforth said road shall be considered a public highway," etc. It follows, therefore, that it was made the duty of the supervisor to proceed to open the road whether or not the commissioners did their duty by issuing their order, as directed by the statute.

From the views expressed, it follows that the record of the commissioners, so offered in evidence by the defendants, was to have the same force and effect, when given in evidence, as is due to a transcript from a justice's docket. It would, therefore, have been inconsistent with the established rules of evidence, to have suffered the plaintiff to introduce parol proof to contradict or invalidate the record; nor could an entry in the journal, or any other writing dehors the record be used for such a purpose. It could not be, even if directly

instead of collaterally called in question, unless upon suggestion of diminution, and by amendment. Such proof was, therefore, properly excluded.

It is unnecessary for us to express any opinion as to the alleged errors in the record being real and substantial errors, or as to the right of amending the record of the commissioners, consistently with the facts, if so amendable. It is certain, however, if any substantial errors existed therein, to the prejudice of the plaintiff, the provision (sec. 511 of the code) that " a judgment rendered or final order made by a probate court, justice of the peace, or any other tribunal, board, or officer, exercising judicial functions and inferior to the court of common pleas, may be reversed, vacated or modified by the court of common pleas," afforded an adequate remedy.

Entertaining the views here expressed a majority of the court hold that the judgment of the district court should be affirmed.

Judgment accordingly.

PECK, BRINKERHOFF and SCOTT, JJ., concurred. GHOLSON, J., dissented.