THE MEMPHIS, KANSAS & COLORADO RAILWAY COMPANY V. THE PARSONS TOWN COMPANY.

1. RAILWAY ROUTE; *Void Condemnation Proceedings.* Where commissioners proceed to lay off a railroad route after proper notice by publication has been given, and after continuing their labors for several days adjourn subject to the call of the president of the board, and embody their doings in a written report, and file the same in the office of the county clerk of the county through which the proposed railroad is located, and thereafter convene again without notice to anyone and proceed to lay off a further route, *held*, that such subsequent proceedings are utterly void as to all parties without notice of the subsequent meeting, as the adjournment of the commissioners under the circumstances stated was an abandonment by them of the proceedings commenced under the notice originally given.

2. SPECIAL AGENT; *Void Notice.* Where a person is appointed the special agent of a town company to sell property of the company at prices prescribed by it, to receive all moneys paid on such sales, and to attend to the payment of taxes on its property, such special authority does not authorize such agent to appear for the company in condemnation proceedings to lay off a railroad route through the real estate of the company, and notice to such agent of the time when the commissioners are to commence to lay off the railroad route is not notice to the company.

*Error from Labette District Court.*

EJECTMENT, brought by the *Parsons Town Company* to recover possession of certain lands occupied by the *Railway Company*, and claimed by the company as its right of way under condemnation proceedings. The case was tried without the intervention of a jury, upon the following agreed statement of facts:

"1. The land in controversy is all of block 50, in the city of Parsons, (which block has never been subdivided into lots,) and a strip of ground 100 feet wide by about — feet long, extending from the east line of the northeast quarter of section 19, township 31, south, range 20, east, in Labette county, Kansas, to a point due south of the east line of block 140, in said city of Parsons, said point being the eastern end or terminus of Morton avenue, in said city, the north and south lines of said strip being equi-distant from and parallel to the line of defendant's railway, as located along the south side of said quarter-section, said strip containing about five acres.

"2. Prior to the condemnation proceedings hereinafter referred to, the plaintiff was the owner and in possession and occupancy of the land described, and continues to be the owner and entitled to the possession thereof, unless shown to be divested of its rights thereto by the facts herein set forth.

"3. On the 30th day of March, 1878, upon the application of the defendant, commissioners were duly appointed to lay off and condemn a right of way for defendant's railway through said county, and on the same day there was published a notice, of which a copy is hereto attached, marked 'A,' and made a part hereof. This notice was published for more than thirty days before the time named therein for the meeting of the commissioners, in a paper printed and published in the county.

"4. On the 25th day of April, 1878, the defendant filed in the office of the county clerk of said county a map and profile of the route intended to be adopted by it in said county. This map and profile showed the intended location of the railway over the strip of land described as a part of the northeast quarter of section 19, but did not show any intended location of the road upon nor within more than 1,000 feet of the land described as block 50.

"5. On the 1st day of May, 1878, the day named in the

notice referred to, the commissioners met, took the oath prescribed by statute, and thereupon proceeded to lay off and condemn a route for said railway, from the east line of Labette county to the east line of the land in controversy, a distance of about ten miles; all of which doings the said commissioners embodied in a written report, which was filed in the office of the county clerk of said county on the 6th day of May, 1878. The lands in controversy are not covered by the proceedings set forth in this report, which, however, states that the commissioners met, etc., 'and proceeded to lay,' etc., 'for the . . . railway for such distance through said county as directed by said company;' and after setting forth the proceedings of the commissioners at length, the report concludes as follows: 'We continued our labors from the day of meeting from day to day, and on the 4th day of May we adjourned, subject to the call of the president of the board, E. H. Edwards.' [Signatures of commissioners.] The clauses in quotation are in the exact language of the report referred to, and no other reference was made in the report to any future meeting or proceeding. Either party shall have the right to treat said report the same as if made a part of this statement, and refer to the same, or any part thereof, as if attached hereto.

"6. On the 14th of May, 1878, without further notice, the same commissioners met, and such further proceedings were had as are set forth in their report, a copy of which is hereto attached, marked 'B' and made a part hereof. On the 15th day of May, 1878, the defendant filed this report in the office of the county clerk of said county, and on the same day caused a certified copy thereof to be filed in the office of the county treasurer of said county, and on the 26th day of June following, paid to the county treasurer the full amount assessed and awarded as damages for all of the land described in said report; and on the same day said report was filed in the office of the register of deeds of said county, and the same was duly recorded in book 'O' of deeds, at page 582.

"7. The plaintiff never received the money deposited with the treasurer aforesaid, and took no appeal from the proceedings of the commissioners.

"8. In the month of June, 1878, and prior to the 15th of said month, certain contractors made a contract with the railway company for the construction of the railway, took possession of the property in controversy, and constructed the railway thereon, locating and constructing several tracks and a depot on the land described as block 50; and when the

road was built, to wit, on the 1st day of July, 1878, it was by the contractors turned over to and has since been operated by the railway company.

"9. No actual notice of any kind was given to or served upon the plaintiff concerning any of the matters herein referred to, nor did the plaintiff have notice of such matters, nor any of them, unless the facts herein stated constitute notice.

"10. If the plaintiff is entitled to possession of the lands described, it has been damaged by being deprived of the use and occupation thereof to the amount of $100.

"11. This action shall not affect the validity of the condemnation proceedings herein referred to, except so far as they relate to the lands in controversy.

"12. During all the proceedings herein referred to, Angell Matthewson, of Parsons, Kansas, was the agent of the Parsons Town Company, with authority to sell the lots and property of the company, at prices prescribed by it, and to receive all moneys paid in on such sales, and to see to the payment of taxes on its property. He was not an officer or stockholder of said company, nor did he have authority other than as mentioned. He was also, during the same time, the president of the railway company, and was present at the adjournment of the commissioners referred to in the fifth paragraph hereof, and was also present at the reconvening of the commissioners referred to in the sixth paragraph."

Exhibit "A," referred to in foregoing statement of facts:

To Whom it May Concern. — Notice is hereby given, that on Wednesday, May 1st, 1878, at nine o'clock A. M., the undersigned commissioners, who have been duly appointed for that purpose, will commence and thereafter proceed to lay off along the proposed line of the Memphis, Kansas & Colorado railway, as located in Labette county, a route for said road, and such other lands, etc., as may be deemed necessary by said railway company, for the purposes and subject to the conditions and restrictions prescribed by law; to cause the land, route, etc., laid off by them, to be carefully surveyed; to ascertain the quantity of land necessary for such purposes out of each quarter-section or other lot of land through or over which such route, etc., is located; to appraise the value of such portion of any such quarter-section or other lot of land, and assess the damages thereto in the manner prescribed by law.

"Witness our hands, this 30th day of March, A. D. 1878.

E. H. EDWARDS,
R. E. HOLLOWAY,
W. A. STARR,
*Commissioners.*"

Exhibit "B," referred to in foregoing agreed statement of facts:

"PARSONS, KANSAS, May 14, 1878.

"And now, to wit, on the above-recited day, the board of commissioners appointed to condemn a route, lands, etc., for the use of the M. K. & C. railway company, in Labette county, Kansas, met pursuant to adjournment, at the call of the chairman, in the city of Parsons, and proceeded to further locate a route, etc., for said railway, as follows, to wit:

*First,* A strip of land sufficiently wide to construct their road, inside the limits prescribed by law, along the south side of the unplatted portion of the northeast quarter of section 19, township 31, south, range 20, east, as now located dan staked out by the engineer of said road, in continuation of Morton avenue, and entering said avenue at the crossing of Adams street, in the city of Parsons, said tract belonging to the Parsons Town Company, and to which tract we assess the sum of five dollars ($5.) . . .

"*Fourth,* To lot 1, block 50, Parsons city, which we condemn for railroad purposes, on which to build and construct buildings, side-tracks, etc., for the use of the M. K. & C. railway company, we assess as damages the sum of five dollars, said lot belonging to the Parsons Town Company.

"There being no further business before the board at this time, the board, on motion, adjourned to meet at the call of the chairman. [Signed]

E. H. EDWARDS, *Chairman.*
W. A. STARR.
R. E. HOLLOWAY."

The *Parsons Town Company* had judgment for the possession of the land, at the July Term, 1881, of the district court, and the *Railway Company* brings the case here.

*Wallace Pratt,* and *Blair & Perry,* for plaintiff in error.

*C. H. Kimball,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Several objections to the validity of the condemnation proceedings for the railway route through the real estate of the defendant in error are urged. In our view, only one need be considered, as that one is fatal. It appears from the record, that notice was properly given that the commissioners would commence to lay off the railway route in Labette county on May 1, 1878, at nine o'clock A. M., and that upon said day the commissioners proceeded in the discharge of their duties, continuing their labors from day to day, and on the 4th of May adjourned, subject to the call of the president of the board; all of which doings the commissioners embodied in a written report, and filed the same in the office of the county clerk of Labette county, on May 6, 1878. On the 14th of May, 1878, without notice to anyone, the commissioners met again, and thereupon proceeded to locate a further route, &c., for the railway, over the land now in controversy. A written report of this proceeding was filed in the office of the county clerk, on May 15, 1878. The trial court found as a matter of law, that the adjournment of the commissioners on May 4, 1878, not to a day certain, but merely upon the call of the president of the board, rendered the subsequent proceedings at the meeting of May 14, void, excepting as to parties having actual notice thereof. We concur in this conclusion of law, and think that there was such an abandonment of the proceedings commenced under the notice published prior to May 1st, that they could not be continued nor revived after May 4th, without new notice. The adjournment without specifying a day for meeting, caused the commissioners to lose jurisdiction. Counsel for plaintiffs claim that the jurisdictional fact was the publication in the newspaper; that thereby jurisdiction attached, and was complete at the first meeting of the commissioners. They then refer us to *Commissioners of Leavenworth County v. Espen,* 12 Kas. 531; *Venard v. Cross,* 8 Kas. 258, and *Beabe v. Scheidt,* 13 Ohio St. 406, as authorities that notice of the

meeting of commissioners is not jurisdictional. A part of the argument of counsel is correct, and a part faulty. The jurisdictional fact, is the publication in a newspaper as prescribed by the statute, but if the proceedings be abandoned for any reason, the subsequent doings have no validity on account of the prior publication. The authorities referred to are not applicable, because in the laying-out and location of high-ways, the jurisdictional notice is given before the order appointing viewers, and therefore it was held that the notice to the land-owners afterward is not a jurisdictional one. Here, the notice was jurisdictional, and we deem all proceedings ended thereunder by the adjournment of the commissioners on May 4th without day. In anticipation of this view, the counsel of plaintiff contend that actual notice of the subsequent meeting of the commissioners on May 14th was had by the defendant, because Angell Matthewson, who was the agent of the defendant to sell property at a price prescribed by it, and receive the money paid on such sales, and to attend to the payment of taxes on its property, was present at the adjournment of the commissioners on May 4th, and was also present at the reconvening of the commissioners on May 14th. The special authority conferred by the Parsons town company upon Matthewson did not authorize him to appear in the condemnation proceedings and attend thereto for the benefit of the company. Notice to him, therefore, was not notice to the company. It also appears from the record, that Matthewson was the president of the railway company, and therefore he could not act both as the agent of the railway company and the agent of the town company. "No man can serve two masters."

The judgment of the district court must be affirmed.

All the Justices concurring.