Bbadbuuy, J.
That the commissioners had jurisdiction of the proceedings prosecuted before them to establish the improvement;, is shown by the finding of the court, provided they had authority to improve that part of the highway which extended into the corporate limits of the city of Norwalk.
The finding of the circuit court in respect to both law and fact is full and complete, and presents the questions in contention between the parties here with unusual clearness. To some of these findings the plaintiffs below excepted, and counsel in argument refer to them; but, as no cross-petition in error has been filed in the case, they are not before us for consideration. Of the findings of the circuit court, to which defendants below excepted, it will only be necessary to consider those which relate to the third conclusion of law, and to the last clause of the finding of fact, as, in the view taken by this court, they are decisive of the case.
The third conclusion of law is, “that the order made by said commissioners of Sept. 20, 1884, was invalid for the reasons:
“ 1st. Because, in said order for said improvement, the commissioners did not state or determine the lots and lands to be assessed for the costs of said improvement.
*666 “ 2d. Because the report of said apportioning committee does not find or determine the proper proportion of the costs and expenses of said improvement, chargeable for special benefits arising from said improvement, conferred upon the lots and lands assessed for the expenses thereof.
if3d. Because the said commissioners had no power or authority to order the improvement of a portion of one of the streets of the city of Norwalk.”
In determining the sufficiency of the records of inferior tribunals and public boards, to express their purposes or to preserve a memorial of their transactions respecting matters within their jurisdiction, technical precision should not be required; on the contrary, they should be liberally construed. They are not usually drawn by persons possessed of professional knowledge or skill in such matters; the law does not contemplate that such tribunals or boards shall be constantly attended by persons having such knowledge or skill, but, rather, that their duties will be performed, at least, generally, without such assistance. To subject them to the test of technical precision, would, in most instances, at least, defeat the object sought to be attained by the legislature in creating inferior tribunals and public boards; and, therefore, however informal their records may be, if enough appears to show with reasonable certainty that the requirements of the law have been substantially complied with, their pi’oeeedings should, upon grounds of public policy, if for no other reason, be sustained. Harding v. Trustees, 3 Ohio, 227; Humiston et al. v. Anderson’s Adm’r, 15 Ohio, 557 ; Barto v. Abbe, 16 Ohio, 408; McClelland v. Miller, 28 Ohio St. 488, 498; Lima v. McBride, 34 Ohio St. 338. Nor should their proceedings be attacked in detail, and an entry or an order separated from the balance of the record, and if found incomplete when considered alone, the proceedings declared erroneous; instead, the whole is to be construed together, and, if from the entire record it appears that all the statutory steps have been substantially taken, the proceedings should be upheld. These principles we adopt and-apply in construing the record of the county commissioners in the case now under consideration.
*667 The order of the commissioners, made September 20, 1884, does not, in direct terms, state Or determine the lots and lands to be assessed for the cost of the improvement, nor does it directly refer to and make the report of the viewers, which does so state and determine, a part of this order ; and, therefore, if technical precision on this point is necessary, the order was defective. But, if it may be considered in connection with what has transpired before, and the nature of the proceeding, how will it stand ? An examination of the- proceedings will show that the commissioners, on August 11, 1884, appointed viewers and directed a notice to be given to them prescribing their duties under the appointment. This was done, and, among other' duties, it required them to ascertain and report “ the lots and lands which will be benefited thereby and ought to be assessed for the expense of the same.” The viewers met, performed their duties, and on September 13, 1884, reported in writing, to the commissioners, their action in the premises, and, in addition to other things, the report, respecting the matter now in review, was as follows: “ We submit herewith a list of the lots and lands which will be benefited thereby, and ought to be assessed for said improvement.” Here follows a list of the lots and lands, with owners’ names arranged in alphabetical order, showing the range, township, section and lot, in which the lot or land to bo assessed is situated, and a short description of the number of acres in each. Accompanying this report was a plat, profile and specification of the improvement, made by the surveyor who attended the viewers, which was treated and considered as a report by him. The record of the comniissioners shows, that on September 13, 1884, this report of the surveyor, together with that of the viewers, was duly filed with them, and that, “said reportshaving been publicly read and carefully considered, * * * the matter was postponed one week, to enable the board to know the number of land owners who were signers to the petition.” The week expired September 20, 1884, and on that day the commissioners made the order for the improvement, which is *668 claimed to be defective in not' naming or determining the lots and lands to be assessed. It is in the following words:
“ Whereupon, the consideration of the report of the viewers, in the matter of the Hawes two-mile assessment pike, was resumed; and the board being satisfied that more than a majority of the resident land owners of the county, whose lands are reported benefited, and ought to be assessed, had signed the petition, on motion of Mr. Simmons, it was ordered that said improvement be made in accordance with the report of the viewers and surveyor.”
It is true this order does not, in terms, name the lots or lands to be assessed to pay the cost of the improvement; but, when the nature of the proceeding before the commissioners is considered; that the scheme, of the improvement contemplated that its cost should be assessed,exclusively upon the lots and lands to be benefited thereby; that one of the main objects to be accomplished by appointing the viewers and surveyor, and the duty enioined upon them by the statute under which they acted, was to ascertain and report, for the information of the commissioners, and as a basis for their order directing the improvement to be made, the lots and lands to be benefited thereby, and which ought to be assessed to pay the cost thereof; that this duty had been performed, and their report in respect thereof was then being considered by the commissioners, and in fact, contained a statement of the lots and lands that in their opinion should be assessed, an order made by that board, directing the “ improvement to be made in ac-. cordance with the report of the viewers and surveyor,” must be regarded as adopting the language and recommendations of the report, as fully and completely as if it had been formally copied into the order. We hold, therefore, that this order, of September 20, 1885, did state and determine the lots and lands to be assessed for the cost of the improvement.
The second reason given in the special finding, for holding as matter of law, that the order of September 20, 1884, was invalid, is, “ Because the report of the apportioning committee does not find or determine the proper proportion of the costs *669 and expenses of said improvement chargeable for special benefits arising from said improvement, conferred upon lots and lands assessed for the expenses thereof.”
In this connection it becomes necessary to refer to the eighth finding of fact. This finding shows that the order of the commissioners, appointing the apportioning committee, was as follows:
“ Ordered that Captain C. Woodruff, Homer Clary and Charles Whitney be appointed the apportioning committee, under section 4842, Revised Statutes, to apportion the expense of said, improvement on the property benefited, and that said committee meet on Monday, September 29,1884, andproceed with the duties of their appointment.” This referred directly to the statute under which the apportioning was to be done, and made certain the duties which the commissioners contemplated and intended the committee to perform. Notice, pursuant to this order, was duly given to the apportioning committee, directing them, among other things, as follows: “ You will, therefore, proceed, forthwith, upon actual view of the premises, to make out said apportionment, according to the benefit to be derived therefrom, and report the same to the county auditor.” And there was attached to this notice a copy of the list of lots and lands, which the viewers and surveyor had reported as benefited by the improvement and ought to be assessed to pay the costs thereof. While neither the order of the commissioners now under consideration, nor the notice to the apportioning committee, directly refers to this list of the lots and lands to be assessed, yet, from the nature of the proceedings, the entries, orders and reports before referred to and set forth in this opinion, and the reference made to the statute, (sec. 4842, Rev. Stats.) by the order itself, it is entirely clear that the commissioners had in view the lots and lands named in the list when they made the order now under review; and it is equally clear, from the language of the order to the apportioning committee, and the duties devolved upon them under it, that this list of lots and lands, together with the order, constituted but one document.
*670 They were fastened together, and in that condition delivered to the apportioning committee. Why this physical joining together? Why attach this list of lots and lands, if they were not those upon which the assessment was to be made ? It was done by the county auditor, who is the clerk of the commissioners respecting these matters. He was performing a public duty. Some purpose was to be accomplished by it, certainly; and what other purpose could the attachment of this list accomplish,'except to point out to the apportioning committee, the lots and lands to be assessed to pay the expenses of the improvement? ISio other list of them was made part of the notice. The apportioning committee had no power to determine what lands should be assessed. The notice, without the list, was, upon its face, an incomplete instrument, in that it did not state the lots and lands that ought to be assessed. The list alone, had no significance; but together they constituted a complete document, that pointed out in unmistakable terms the duties which it imposed upon the committee. We, therefore, hold, that the list of lots and lands attached to the notice was a part of it.
When it is shown that the list of lots and lands that the viewers and surveyor reported as benefited by the improvement, and ought to be assessed to pay the costs thereof, was properly a part of the notice given to the apportioning committee, their duties thereunder clearly appear. They were to apportion the cost of the improvement to the lots and lands, named in the list, according to the benefits to be derived therefrom, and report the same to the county auditor.' They proceeded under the notice, made an apportionment of the costs to the lots and lands named in the list, and reported as follows, to-wit:
“We, the undersigned committee, appointed by your honorable board to apportion the estimated expense of the improvement of a two-mile assessment pike road in Norwalk Township, as petitioned for by O. M. Hawes and others, upon actual view of the premises, would respectfully report the following list of lots and lands, with the respective sums assessed on each, as follows: ”
*671 Then follows a list of lots and lands assessed by the committee, with the amount assessed against the same. This list was the same list accompanying the auditor’s notice to the apportioning committee. This report' does not state that the committee made the apportionment according to benefits, nor does it state that they did not; it is silent in respect thereto. The instructions embodied in the notice of their appointment as well as the statute (Sec. 4842 Rev. Stats.) under which they acted, pointed out, in unmistakable terms, the manner in which the apportionment should be made. They were in the performance of a public duty, and the presumption is, in the absence of any contrary indication, that they did it in a lawful manner. Coombs et al. v. Lane, 4 Ohio St. 112; Reynolds et al. v. Schweinefus, 27 Ohio St. 311; Titus v. Lewis, 33 Ohio St. 304. We think, therefore, that the transcript of the proceedings had before the commissioners, when examined according to the principles adopted by this, court, sufficiently shows that the apportioning committee did find and determine the proper proportion of costs and expenses chargeable for special benefits conferred upon the several lots and lands assessed therefor.
The third reason assigned, in support of the third conclusion of law, presents the question of the power of the county commissioners to improve a state or county road when it is also a street of a municipal corporation ; and to the discussion of this interesting and important question counsel have devoted a considerable part of their very able briefs; and, counsel for defendants in error, have, with great force, pressed upon the attention of the court the mischief that might arise from a conflict of jurisdiction, if it should be held that the county commissioners have the power contended for. This argument is not without force, and in a doubtful case might determine the construction to be placed upon the provisions of a statute.
That a state or county road is not extinguished by becoming a street of a municipal corporation is clear. It retains its character of a state or county road, even as to such portions of it as may chance to fall within the limits of a municipal corpora *672 tion, that may be subsequently organized; nor is this character changed because the municipal authorities call it a street and give to it a name as such, and are invested by law with its general control. Should the municipality cease to exist, the highway would at the same time cease to be a street, but it would not cease to be the state or county road which it was originally.
If so apparent a proposition requires support from authority, ■enough will be found in the case of Bisher v. Richards, 9 Ohio St. 485, where it was held, that the laying out of a state road ■ overa county road did not extinguish the latter," but that both might co-exist. If that is so, upon the same principle, a state ■or county road would continue to exist after its adoption by a .municipal corporation as a street.
It has also been held in this state, that under a statute giving the commissioners general power to lay out and establish county roads, they were authorized to lay out and establish a county road within or through an incorporated town or city. Wells v. McLaughlin, 17 Ohio, 99. Also, one “whose termini are wholly within the limits of an incorporated town or city.” Butman v. Fowler et al., 17 Ohio, 101. These cases establish the doctrine, that territory, within a municipal corporation, is not exempt from the operation of general laws giving authority to county commissioners respecting public highways.
The statute under which the commissioners were acting, in the case under consideration, is a general one, and reads as follows:
“Section 4829. The county commissioners of any county shall have power, as hereinafter provided, to lay out and construct any new county road, or improve any state, county, or township road, or any part thereof, or any free turnpike road, or any part thereof not completed, by straightening or altering the same, and by grading, paving, graveling, planking, or macadamizing the same, and by draining the same in any direction required to make the most convenient and sufficient ■ outlet; and for such purpose they may, upon further petition, when by them deemed expedient, vacate any state, county, or -township road, or any part thereof, or any free turnpike road, *673 or any part thereof not completed, and may improve several roads, or parts of roads, or free turnpike roads or parts thereof not completed, when the same may be united in one continuous road improvement.”
The power conferred by this section is as full, ample and general, as that conferred by the statutes under which the commissioners were acting in the cases of Wells v. McLaughlin and Butman v. Fowler, supra, where it was held that the- power of the county commissioners did extend to and authorize them to lay out and establish public roads within incorporated towns and cities. Therefore, unless this power is limited by some other statutory provisions, the commissioners had authority, under the statute above recited, to make the improvement in question. This construction is strengthened by the proviso added in 1884, (81 Ohio Laws, 56) to sec. 4831 of the same act, which reads as follows:
“ Provided, that in locating such improvement within the territorial limits of any incorporated village or town, the engineer and viewers shall be confined to the platted streets of such village or town.”
And by section 4850, as amended in 1882 (77 Ohio Laws 50):
“ When any road to be improved under and by virtue o, this chapter begins or terminates in a city or village, the Corporate authorities thereof may, upon the recommendation of the county commissioners, if they deem the same expedient, agree to pay in the bonds of such city or village, in the manner and proportions described in section 4846, in addition to any amount that may be assessed upon the real property within such corporation by virtue of the provisions of this chapter, an amount not exceeding one-fifth of the entire cost of the road; but the entire tax to be imposed for road purposes, by virtue of this section, shall not in any year exceed five mills on the dollar of the taxable property in the corporation.”
This section and proviso clearly show the construction intended by the legislature. In addition to this they adopted the *674 general language employed in sec. 4829, Rev. Stats., after such general terms had received a judicial construction, in the cases of Wells v. McLaughlin and Batman v. Fowler, supra, that brought within the jurisdiction of county commissioners proceedings to establish state and county roads within the limits of municipal corporations; and are presumed to have had that construction in mind when legislating subsequently upon the same general subject.
In the sections of the municipal code, which bear directly on the subject of street improvement, no words excluding this power of the county commissioners are found, nor are there any direct words of exclusion in sec. 2640, Rev. Stats. That section reads as follows:
“ The council shall have the care, supervision and control of all public highways, streets, avenues, alleys sidewalks, public grounds and bridges within the corporation, and shall cause the same to be kept open and in repair*, and free from nuisance.”
But it is contended that the general power conferred on municipal corporations by this section, and the special power to improve streets given by other sections of the municipal code, are incompatible with the existence of authority in the county commissioners to improve that portion of a state or county road which may lie within the corporate limits If this contention is true it becomes a matter for the most careful consideration to determine which authority must yield to the other; and in that view it might be important to cast up the advantages on the one hand and the evils on the other, incident to such construction, and ascertain upon which side the balance stood; upon the theory that the legislature must be taken to have intended to promote the public welfare, and therefore intended that to be the law which, would best accomplish it. But is there any such incompatibility? That there” is some danger of a conflict of authority between the county commissioners and the municipal council, where both have power to improve the same highway, can not be denied. That is a danger that always exists where two independent officers or bodies have a concurrent authority over the same *675 subject; yet, in many instances, there are other considerations that override this objection, and the concurrent authority is given. This is a question of public policy, to be considered and determined by the legislature alone.
It is true that sec. 2640, in very general terms gives to municipal councils the “care, supervision and control of all public highways, * * * within the corporation.” The power conferred by this section is full and ample ; but it contains no words directly excluding that conferred by the statute upon county commissioners. If it has that effect, it amounts to a repeal of the latter statute by implication. Repeals of this kind are not favored.
The duty of the court is to consider all the statutes upon the subject together, and, if possible, uphold all of them, and give due force and operation to every part of each. We discover no difficulty in doing this in the case before us. The legislature, by the provisions of sec. 2640, Rev. Stats., bestowed a very general control over the highways within municipal corporations, but, at the same time, they have preserved to the county commissioners a power to improve those public highways which are a part of the general road system of the county, though they may happen to lie partly within the limits of the municipality.
As we hold the proceedings before the commissioners to be in substantial compliance with the statutes under which they were had, and that they had power to improve that portion of the state road which fell within the city limits, it follows that the assessments were all valid, and any discussion of the doctrine of estoppel becomes unnecessary; and we do not care to add anything to the thorough statement of the principles of the doctrine to be found in Tone v. Columbus, 39 Ohio St. 281.
The questions considered in this opinion are presented by the record, and were of sufficient importance to require a decision directly upon them, though the case might have been decided upon the ground that, as the parties had a remedy at law, they could not invoke the aid of equity.
*676 The action was brought, nominally, to enjoin the collection of an illegal assessment; but whether it had been illegally assessed or not, depended upon the jurisdiction of the county commissioners over the subject matter; and, if they had such jurisdiction, then upon the regularity of the proceedings had before them. These proceedings could have been reviewed by petition in error, under sec. 6708 Rev. Stats, and relief had against any error apparent on their face. Haff v. Fuller, 45 Ohio St. 495; Burrows v. Vandevier, 3 Ohio 383; Ferris v. Bramble, 5 Ohio St. 109; Beebee v. Scheidt, 13 Ohio St. 406; Coms. v. Jenkins, 19 Ohio St. 348; Farvert v. Finfrock, 43 Ohio St. 335.
The principle decided in Haff v. Fuller, supra, applies equally as well to proceedings before county commissioners under the two-mile assessment pike laws,as to proceedings before township trustees under the ditch laws. In that case the action was -directly to enjoin the construction of the improvement (a ditch), while in the case before us it was to enjoin the collection of an assessment to pay its costs, which latter action is authorized by chapter 13 of the Code of Civil Procedure; but, in either case, it was the jurisdiction of the board and the regularity of the proceeding had before it, that were challenged; and the right of the party to do this in equity, cannot depend upon his lying by until the improvement is substantially completed, and then seeking to accomplish by its aid what he could have done by a proceeding in error. The rule is laid down in 43 Ohio St. 497, as follows : “ As a result of the rule that courts of equity do not entertain jurisdiction for the enforcement of rights or the prevention of wrongs, when the legal tribunals are capable of affording redress, it is always a sufficient objection to the granting of an injunction, that the party aggrieved has a full and adequate remedy at law. In' the application of the rule it is accordingly held, that courts of equity will not sit as courts of error, to revise and correct proceedings at law or grant injunctions against judgments, because of errors in the proceedings, when proper relief can be had in the ordinary *677 courts of appellate procedure.” The omissions and irregularities, held by the circuit court to be errors invalidating the proceeding had before the county commissioners, were all apparent on their face, and for their correction there was provided a legal remedy by petition in error, and they were not proper predicates for equitable relief.

Judgment reversed and the petition of the plaintiff dismissed.