(Hamilton County Court of Common Pleas.)

## WILLIAM S. STEARNS *v.* JAMES I. TAYLOR, GEORGE STODDARD, AND JOHN W. PFAFF.

A voter at a municipal election put a cross-mark on a ticket in the place provided to indicate a straight vote for that ticket; put no other mark on that ticket, but drew a line diagonally across the other ticket printed on the same ballot, there being but two tickets on the ballot, in such a way as to emphasize his intention to vote a straight ticket. *Held:* That his error in drawing such line is technical only, and his intention to vote a straight ticket being clear, the vote should not be rejected, but counted for all the candidates on the ticket on which the cross mark was made. And generally where the voter has indicated his intention to vote a straight ticket by placing a cross-mark in the place provided at the top of the ticket, his vote should not be lost because of additional marks put by him on another ticket merely for the evident purpose of emphasizing such intention.

Whether error lies to the court of common pleas from the decision of a village council in a contest before it of the election of its own members. *Quære.*

(Decided September, 1894.)

---

ERROR to the council of the village of Wyoming.

HOLLISTER, J.

At the regular election held April 2, 1894, for the election of members of council for the village of Wyoming, the judges of election counted 157 votes as cast for William S. Stearns, and 156 votes for James I. Taylor, and declared Stearns elected. Taylor contested before the council, and on the hearing, council found that three votes should have been credited to Taylor, which the judges had thrown out as not being in compliance with law. Therefore council declared Taylor elected, and unseated Stearns.

Stearns filed his petition in error in this court, alleging: "That the council erred in admitting, against his protests and objections, evidence as to the contents and condition of ballots that had been rejected unanimously

by the judges, and had been destroyed by them, in pursuance of law, at the close of the election; and that they erred in finding that some of the ballots were legal and entitled to be counted, and that they erred in finding Taylor entitled to the seat, and not Stearns.

Defendants in error move to dismiss the petition in error, on the ground that this court has no jurisdiction.

The constitution, art. 4, sec. 4, provides that: "The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law." Concerning this provision, the Supreme Court says: "The constitution itself confers no jurisdiction whatever upon that court, either in civil or criminal cases. It is given a capacity to receive jurisdiction in all such cases, but it can exercise none until fixed by law." *Stevens* v. *State*, 3 Ohio St. 453.

The legislature fixed the jurisdiction of this court in error by the enactment of section 6708 of the Revised Statutes: "A judgment rendered, or final order made by a probate judge, justice of the peace, or any other tribunal, board or officer, exercising judicial functions and inferior in jurisdiction to the court of common pleas, may be reversed, vacated, or modified by the court of common pleas." And a final order is defined: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this title." Sec. 6707, Rev. Stat.

The proceeding in which it is claimed error occurred was had under section 1679, which provides that: "The council, and when of two branches, each branch, shall be the judge of the election, returns, and qualifications of its own members, shall determine the rule of its procedure and keep a journal of its proceedings, and may compel the attendance of absent members in such manner and under such penalties, as may, by ordinance, be prescribed."

Now, if the council in the special proceeding wherein Taylor was declared elected as against Stearns, made a final order affecting a substantial right, and were "exercising judicial functions", then, without doubt, error lies to this court. The question of what are judicial functions has not been directly decided in this state. There is a series of cases bearing on this subject: "The court of common pleas has jurisdiction by *certiorari* to revive the proceedings of inferior tribunals, and jurisdiction of all other writs necessary for the due administration of justice," and "The remedial statute conferring this jurisdiction is entitled to a liberal construction." *Ferris* v. *Bramble*, 5 Ohio St. 110. In that case, the court cites *Burrows* v. *Vandevier*, 3 Ohio, 383, to the effect that *certiorari* would lie to the common pleas, to correct the errors of township trustees, as well as county commissioners, and all inferior tribunals authorized by law to pronounce judgment upon any matters before them.

In *Beebe* v. *Scheidt*, 13 Ohio St. 406, 419, the court intimate that if there were any error in the proceedings of county commissioners in opening a public highway, section 511 of the code, 6708, Rev. Stat., *supra*, afforded an adequate remedy by proceedings in error in the common pleas.

Again, it was held that that section conferred jurisdiction on this court to review on error the final orders of boards of county commissioners, in proceedings under the act for opening and regulating roads and highways.

*Commissioners* v. *Junkins*, 19 Ohio St. 348. It was claimed in that case that section 511 (6708) conferred jurisdiction in error to the final orders of those officers only who are elected as judicial officers. The court say, at page 353: "This would be a restriction not warranted by the language of the section," * * * * This section is of a remedial character, and must be liberally construed, with a view to promote its object. When the code was adopted, proceedings according to the course of the common law were reviewable upon writs of error, and those of the character under consideration in this case, on *certiorari*. These writs to review judgments and final orders in civil cases, are abolished by the 530th section of the code (sec. 6731, Rev. Stats.), but remedies obtained by means of these writs are preserved by the general provisions of the code for review by petition in error." These provisions are contained in sec. 511 code, Rev. Stat. 6708, and say the court further: "It would seem, then, that the board of commissioners in cases of this kind, may properly be regarded as a 'board', exercising, within the meaning of the statute, 'judicial functions,' and that, therefore, the court of common pleas had jurisdiction to review, on petition in error, the proceedings" of that board.

Again, in *Haff* v. *Fuller*, 45 Ohio St. 495, these cases are cited, and the rule is laid down that, "In this state, the proceedings and final orders of township trustees and county commissioners, establishing ditches and roads, and of other boards exercising judicial functions, may be reviewed by petition in error, and reversed for errors appearing on the record."

By analogy, if the proceedings of council in determining questions affecting the election of its own members are of the same character as the proceedings of township trustees and county commissioners, with respect to the nature of their functions in ditch and road cases, there can be no doubt that from those proceedings error would lie to this court.

Before taking up the inquiry into this subject, it will be profitable to consider the decision of the Supreme Court in *State ex rel.* v. *Berry*, 47 Ohio St. 232. The action was in *quo warranto*, and involved the right of Berry to hold and exercise the office of a member of council of the Village of Westwood, in Hamilton county. It was held that the *power* conferred on council to determine the election of its own members is exclusive, and cannot be determined by a proceeding in *quo warranto*, or in any other mode than is provided by this section (1679 Revised Statutes). "Whether the determination of the council in a contested election of its own members, may be reviewed on error, is not presented in this case, and is not decided."

Concerning section 1679, the Supreme Court say in *State ex rel.* v. *O'Brien*, 47 Ohio St. 464, 470: "The statute * * * no doubt, was enacted in obedience to that requirement of the constitution which provided that "The general assembly shall determine, by law, before what authority, and in what manner, the trial of contested elections shall be conducted." Section 21, article 2. In the light of this constitutional provision, section 1679 must be regarded as a designation, by law, of the authority before which the trial of contested elections of members of the council of municipal corporations shall be conducted; and it confers upon such councils, complete power to hear and determine all questions arising upon a contest of the election of members thereof." That action was *quo warranto* to determine whether the defendants were entitled to exercise the powers of members of council. Say the court, at page 469, "The defendants contend, that the jurisdiction with which the municipal

council and its branches is thus invested, is exclusive ; and, that in the exercise of that jurisdiction, every question appertaining to the right of the. office may be determined, and consequently the court is without jurisdiction to inquire into the defendants' title to the office they claim to hold." And further, at page 470, " If then, this action may be treated as a contest of the election of the defendants, as members of the council, and involves no inquiry which may not properly be determined upon such contest, the defendants must prevail."

Now the proceeding of the council was in the nature of the trial of a contested election, and it becomes important to determine whether the council, in trying such a question, is exercising judicial functions.

SCOTT, J., in *Ingersoll* v. *Berry*, 14 Ohio St. 324, defines the contest of an election to be :   " The specific remedy provided by statute for the correction of all errors, frauds and mistakes which may occur in the process of ascertaining and declaring the true expression of the public will."

The case at bar is a case of contested election under that definition, and the Supreme Court of Pennsylvania, in *Commonwealth* v. *Leach*, 44 Pa. St. 332, covers this case in its declaration that :   " Where there are two claimants under the same election for the same office, which only one of them can have, it constitutes a case of contested election, which is to be tried in the mode specifically provided for in such cases, and not by the ordinary form of judicial process, the statutory remedy for this statutory right supplying the place of the common law remedy."

Now, the legislature has established a method of determining the questions arising in a contested election ; but this does not necessarily give the council judicial power such as belongs to courts, nor are the functions exercised under and appertaining to the power necessarily judicial in the sense in which that adjective is used in the statutes in its relation to courts. While judicial power and judicial function are not interchangeable terms, yet the exercise of the one depends upon the existence of the other.   There could be no exercise of a function without the existence of that power to which the function pertains.   A judicial function cannot be exercised without judicial power to exercise it.   The Century Dictionary, defining the word function, says :   " Power of acting ; faculty ; that power of acting in a specific way which appertains to a thing by virtue of its special constitution."   The judicial function then, appertains to the court, board, or officer having judicial power.   What judicial power is, was discussed in *State ex rel.* v. *Harmon*, 31 Ohio St. 250.   The action was *quo warranto* to obtain judgment of ouster against the defendant from the office of common pleas judge.   The question raised was that the act which authorized the election of certain officers before the senate was unconstitutional.   It was contended that the power to try such cases was judicial in its nature, and that therefore sec. 1, art. 4, and sec. 32, art. 2, were contravened.   Sec. 1, art. 4, quoted above in full, provides where the judicial power of the state shall be vested, and sec. 32, art. 2, provides that the legislature shall not " exercise any judicial power not herein expressly conferred."   The court, per WHITE, J., say :   " What constitutes judicial power, within the meaning of the constitution, is to be determined in the light of the common law, and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution.   Whether power in a given instance ought to be assigned to the judicial department, is ordinarily determinable from the nature of the subject to which the power relates.   In many instances, however, it may appropriately be assigned to either of the depart-

ments. It is said authority to hear and determine a controversy upon the law and fact, is judicial power." "That such authority is essential to the exercise of judicial power, is admitted, but it does not follow that the exercise of such authority is necessarily the exercise of judicial power. The authority to ascertain facts, and to apply the law to the facts when ascertained, appertains as well to the other departments of the government as to the judiciary."

And the court say further, at page 260: "Our system of elections is unknown to the common law. The whole subject is regulated by statute; and the mode of contesting elections is part of the machinery provided by statute for ascertaining the result of the election. "Independent of the original nature of the power, the constitution itself plainly recognized the separation of the authority to try contested election cases from the judicial power which is required to be vested in the courts."

Section 1769 was enacted by virtue of section 21, article 2, of the constitution, which says: "The general assembly shall determine by law before what authority, and in what manner the trial of contested elections shall be conducted."

"Under this provision," say the court in the case last cited, "the selection of the authority for the trial of contested elections rests in the discretion of the general assembly; and the exercise of this discretion ·is not limited to a selection to be made from the courts established under the constitution." See remarks of SCOTT, J., in State v. Marlow, 15 Ohio St. 114, 134. Among other things, he says: "The legislation being not merely permitted, but enjoined by the constitution, has, in effect, the same high sanction as though it formed a part of that instrument. Jurisdiction being thus specially conferred upon other tribunals and the mode of its exercise prescribed, it cannot be inferred that it was intended by the constitution to be differently exercised by a proceeding in quo warranto, as at common law, or by the supreme court and district courts, under a mere general grant of jurisdiction in quo warranto."

It is very clear that the council gets its authority to try contested elections of its members, not under the article of the constitution providing for the establishment of inferior tribunals, but under the section giving the legislature authority to establish tribunals not constituted as courts of law are.

The conclusion in State v. Harmon, was therefore, that the legislature was not exercising judicial power in trying contested election cases. If not, it surely could not and did not exercise any judicial function.

The Supreme Court in State ex rel. v. Hawkins, 44 Ohio St. 98, 109, while stating that "What is judicial power cannot be brought within the ring-fence of a definition," undertakes to say that "It may be safely conceded, that power to hear and determine rights of property and of person between private parties is judicial, and can only be conferred on the courts," and goes on to say that "The incumbent of an office has not, under our system of government any property in it. His right to exercise it is not based upon any contract or grant. It is conferred on him as a public trust to be exercised for the benefit of the public." "A public office and its creation is a matter of public, and not of private law."

Our system of elections being unknown to the common law, the question affecting public, rather than private rights, the tribunal to try contests being established by the legislature under a provision of the constitution entirely separate and distinct from that provision giving authority to es-

tablish tribunals with judicial power, I am of the opinion that in trying a contested election of one of its members, the council is not exercising any function judicial in its nature in the sense used by the legislature in providing for petitions on error to this court; and that the order of council on the question involved did not affect any substantial right as between the contestant and contestee.

I am informed, however, that this court took a different view in a case heretofore determined by it, and therefore overrule the motion to dismiss the petition in error.

The first error complained of is that council admitted evidence of the contents and condition of the three ballots, which the judges had unanimously rejected, and had burned as required by law. It is true, that all ballots, excepting such as to which the judges have unanimous views as to their legality, should be burned; but council being the exclusive judge of the elections, returns, etc., of its own members, would possess an empty power if no inquiry could be made into the fraud or mistake of the judges of election. "The remedy for frauds and mistakes, other than clerical is by proper proceedings in court, or before the board or body for membership in which the person aggrieved is a candidate, where that board or body has the power conferred upon it to determine the qualification and election of its own members." *People ex rel.* v. *Town Canvassers*, 19 N. Y. Sup. 206.

The ballots having been destroyed, there was no other way for council to proceed except by hearing secondary evidence as to the three ballots in question. No error intervened here.

But it is claimed that under the election laws in force in this state, the "Australian Ballot" system, the three votes counted for Taylor should have been, and were justly, thrown out. Taylor was on the Republican ticket; Stearns on the Citizens' ticket. There were no other tickets in the field. The tickets were printed in parallel columns as required by law, both on one ballot. At the head of each was the circle within which the voter could put a cross-mark, indicating his intention to vote a straight ticket. In each of the three ballots such mark is found in the circle at the head of the Republican ticket, and no other mark whatever on that ticket. If the three voters had stopped at this point, there would have been no question of the manner of counting the votes; but the voters, as if to emphasize their intention to vote the Republican ticket, each made marks on the Citizens' ticket, one by drawing a line through each name on that ticket; one by drawing a line through from left to right through the first and second names on the Citizens' ticket and a diagonal line through that ticket from the right hand top corner to the opposite corner at the bottom, and one by drawing a similar line through the Citizens' ticket. There can be no doubt but that each of these voters intended to vote the straight Republican ticket. They have not strictly followed out the statutory rules in marking such ballots, but their error is entirely technical, and is cured by the provision that "No ballot shall be rejected for any technical error, which does not make it impossible to determine the voter's choice."

The determination of these questions disposes of the other errors assigned. There is no error in the record, and the petition in error must be dismissed.

*Bateman & Harper*, for plaintiff in error.
*Marsh & Ritchie*, for defendant in error.