No. 20,549.

THE STATE OF KANSAS, ex rel. W. L. SAYERS, as County At-
torney, etc., *Appellee*, v. A. D. MANNY, *Appellant*, et al.

### SYLLABUS BY THE COURT.

1. HIGHWAY — *Section Line — Sixty-foot Highway Created by Statute.*
An act was passed declaring a section line a highway, fixing its width
at sixty feet, and providing that claims for damages should be pre-
sented within one year from the time it was actually opened to public
use. The road was already in use as such, under proceedings estab-
lishing it as a highway forty feet wide, but the travel covered approxi-
mately sixty feet. *Held*, that the statute created a sixty-foot highway
without further order by the road overseer.

2. SAME — *Section Line — Statutory Survey — Not Conclusive Upon
State.* The result of a statutory survey to fix the location of a section
line is not conclusive upon the state in an action to determine the posi-
tion of a highway established along such line.

3. SAME—*Location of Section Line—Question of Fact.* The evidence
held to make the true location of the section line a question of fact
upon which the decision of the trial court is final.

Appeal from Graham district court; CHARLES W. SMITH,
judge. Opinion filed November 11, 1916. Affirmed.

*James O. McVey*, and *F. D. Turck*, both of Hill City, for the
appellant.

*S. M. Brewster*, attorney-general, and *W. L. Sayers*, county
attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: An action was brought in the name of the state,
on the relation of the county attorney, to enjoin A. D. Manny
and another from maintaining fences in a highway. Judgment
was rendered for the plaintiff, and the defendant Manny ap-
peals.

1. The county commissioners undertook to establish the
road in question in 1881. The steps taken were characterized
by irregularities, but a validating act was passed in 1889.
(Laws 1889, ch. 20.) Nothing to the contrary having been
specified, the width of the road resulting from these proceed-
ings was limited to forty feet. (*Willis v. Sproule*, 13 Kan.

The State, *ex rel.*, v. Manny.

257.)    In 1887, however, the legislature declared the section line, which this road undertook to follow, to be a public highway, fixing the width at sixty feet, and allowing claims for damages to be presented within one year from the time it should be actually opened to public use.    (Laws 1887, ch. 215.) No formal order was shown for the opening of the road after the enactment of this statute, but the court found that it had been continuously in use for more than thirty years, the travel covering a width of approximately sixty feet; therefore, the further finding of the existence of a public highway of that width was justified, although ordinarily an order for its opening would be necessary for the creation of a road by such a statute.    (*Hanselman v. Born,* 71 Kan. 573, 81 Pac. 192.)

2.    The persons using the road undertook to follow the section line, and any departure from that course was inadvertent, so that the problem of determining the real location of the highway is that of finding the true section line.    (*Shanline v. Wiltsie,* 70 Kan. 177, 78 Pac. 436.)    The road follows the west line of Manny's land.    The trial court decided that the section line, as established by the government survey, lies east of its position as determined by a survey made in 1906, to which the adjoining owners were parties, the difference being twenty-five links at the south boundary of the tract, and eighty-three at the north.    Manny contends that the survey is conclusive upon the public, or the state, as well as upon the adjoining owners.    Although a statutory survey is made by a public officer, it is essentially an adversary proceeding between individuals.    No one who is not a party is bound by it.    No specific provision is made for notice to any one as representing the public with respect to its interest in a highway, the statute merely requiring the surveyor to notify interested parties.    (Gen. Stat. 1909, § 2254.)    Possibly a notice to the board of county commissioners might enable the public's interest to be litigated in such a proceeding.    But in the absence of special circumstances, making the public in effect a party, the matter must be governed by the rule that the state is not bound by a judgment rendered in litigation between private persons, nor by a judgment against a public officer except with respect to a matter concerning which he is authorized to represent the government.    (23 Cyc. 1279.)    This rule has been applied to

prevent the result of a statutory action to determine the location of the county seat from precluding an independent examination of the question at the instigation of the state. (*The State, ex rel., v. Stock,* 38 Kan. 154, 16 Pac. 106. See, also, Note, 105 Am. St. Rep. 210; Maine and New Hampshire cases cited in Note, 3 Ann. Cas. 1065.) Some practical inconveniences may result from the location of a section line at one place as a boundary between adjoining owners, and at another as controlling the position of a highway, but a different holding might compel a change of a highly-improved road, upon which public funds had been freely expended, by reason of the result of a survey conducted to settle a private controversy.

3. The final contention of the appellant is that there was no evidence to support the finding that the section line as determined by the court coincided with that established by the government survey. Evidence was introduced tending to show its recognition for many years as the original line, by the course of the road, and by furrows plowed and trees and fences set with regard to it. The most important single item of evidence related to a stone in the middle of the road, which according to some of the witnesses had been regarded from early times as that set by the government surveyors to mark a section corner, and which had been in practically the same place for twenty-eight years. The county surveyor testified that the field notes describe a limestone seventeen by four inches in size. (The dimensions actually given by the field notes are 17 x 10 x 4.) He also described the stone in question as being soft sandstone, about seventeen and one-half inches by sixteen by six. The discrepancy as to the size of the stone is more difficult of reconcilement than that relating to its character. But in any event the evidence presented a fair question of fact for the trial court, and its decision must be regarded as final. Recognition and acquiescence, as well as the monuments set by the government surveyors, may be sufficient to prevail over the field notes of the original survey. (*Tarpenning v. Cannon,* 28 Kan. 665.)

The judgment is affirmed.